COMMONWEALTH *vs.* ANTHONY DEMBOSKI & another.

Suffolk.     May 12, 15, 1933. — June 26, 1933.

Present: RUGG, C.J., PIERCE, WAIT, FIELD, & LUMMUS, JJ.

*Assault with Intent to kill. Practice, Criminal,* Isolation of jury; Appeal with assignments of error: whether error prejudicial; Sentence. *Jury and Jurors.*

Upon the record before this court upon an appeal with assignments of error following the trial of two defendants on an indictment charging four defendants with assault with intent to murder a police officer, no error was shown in action by the judge ordering the locking up of the jury without giving any reason therefor save a request by the district attorney, where there was nothing in the record to indicate in any degree that the action by the judge was exercised arbitrarily to the prejudice of the defendants.

At the trial of the indictment above described, there was evidence for the Commonwealth fully descriptive of the assault. The Commonwealth, to show a motive for the crime charged, offered evidence that the police officer on a previous occasion had arrested two of the defendants when they were together. The defendants objected to the evidence. The judge admitted the evidence "out of order" and stated: "If no evidence is put in to make it material, I will strike it out." No request thereafter was made to strike out such evidence and the record disclosed nothing to indicate that the judge's attention was directed again to the defendants' contention that such evidence was not material. *Held*, that, whether or not the evidence had any probative value which made it admissible in evidence, there was no reversible error.

At the trial above described, there was evidence that the police officer by reason of a telephone call from an unknown person which he received on Saturday went to the place where he was assaulted, but not until Sunday. The Commonwealth, subject to objection and exception by the defendants, was permitted to introduce in evidence the telephone conversation with the unknown person, from which it appeared that the officer was told in the conversation that the defendants, then not known to him as the perpetrators of a crime which he was investigating, had been implicated therein, and that on Sunday they would be at the place in question. The judge stated that he would allow only so much of the conversation "as bears on the question of time to stand," that the rest of the conversation was "entirely incompetent," and, addressing the jury, said: "That is admitted, gentlemen, for the sole purpose of fixing the time. The rest of it you should disregard." *Held*, that no error was shown.

An assault with intent to commit murder and an assault with intent to commit manslaughter are made felonies by G. L. (Ter. Ed.) c. 265, §§ 15, 29; c. 274, § 1.

One indicted for assault with intent to commit murder may be convicted of assault with intent to kill.

Where, upon an indictment charging assault with intent to commit murder, the jury finds the defendant guilty of "assault with intent to kill," the defendant stands convicted of assault with intent to commit manslaughter, punishable as a separate crime under G. L. (Ter. Ed.) c. 265, § 29, which carries the same penalty as that stated in G. L. (Ter. Ed.) c. 265, § 15, dealing with assault with intent to murder.

INDICTMENT, found and returned on March 8, 1933, and described in the opinion.

The indictment was tried against Demboski and Dineen before *Greenhalge*, J. Material evidence, the verdict of the jury and proceedings after the trial are described in the opinion.

The testimony upon which exceptions 12, 13 and 14 were based was by the police officer McDonald and stated

in substance a conversation on the telephone on Saturday, January 14, 1933, with an unknown person in the course of which the following, among other things, were said: he was asked if he had "been handling the Economy Grocery Store warehouse holdup," and answered, "Yes"; he was asked, "Do you know your men?" and answered, "No, not as yet"; he then was told that they were to meet "tomorrow night at Steve Gustin's place" at a certain hour. Other evidence was to the effect that the officer went to that place on Sunday evening, January 15, at the time stated and that the events described in the opinion occurred.

The verdict was returned on March 18, 1933. On March 20, a claim of appeal, and on April 14, assignments of error were filed by the defendants.

*J. P. Walsh,* (*H. Aronofsky* with him,) for the defendants.

*F. T. Doyle,* Assistant District Attorney, (*W. J. Sullivan,* Assistant District Attorney, with him,) for the Commonwealth.

PIERCE, J. This case comes before this court on appeal on assignments of error. The defendants, Anthony Demboski and Thomas P. Dineen, with Stephen Wallace (alias Steve Gustin) and Francis P. Sullivan (alias Francis Sullivan) were indicted for an assault with intent to murder Daniel J. McDonald on January 15, 1933. Demboski and Dineen were put on trial, and on March 18, 1933, both defendants were found by the jury "Guilty of assault with intent to kill." On the same day the defendant Dineen was sentenced to the State prison for a term of not less than nine years nor more than ten years, and the defendant Demboski was sentenced to the State prison for a term of not less than eight years nor more than nine years. During the trial of the case the defendants took exception to the admission and exclusion of evidence by the presiding judge. On March 21, 1933, the defendants, by their attorney, filed a motion to revoke and vacate the sentences and also a motion for a new trial. On March 28, 1933, the defendants filed a waiver of a motion for a new trial. On April 4, 1933, the motion to revoke and vacate the sen-

tences was denied and the defendants duly filed a claim of exception to such denial.

The salient facts which the evidence for the Commonwealth warranted a jury in finding are in substance, as follows: On Saturday, January 14, 1933, Daniel J. McDonald, a member of the Boston police department, was investigating a holdup that had occurred in the Economy company warehouse on D Street, South Boston, on December 25, 1932. On January 14, 1933, he received a telephone call at police headquarters and as a result of that call went in civilian clothes to the premises numbered 2 Vinton Street, South Boston. He arrived there at about 6:35 P.M. January 15, 1933; he entered a room on the second floor and there met Stephen Wallace (alias Steve Gustin, one of the persons named in the indictment in the case at bar), and also the defendant Demboski. He had some talk with them and took some whiskey which Demboski gave him in a glass, drank it, and then went into the front room and sat down in a chair with his head "pitched down," "bent down." As he sat there Dineen came into the room, walked over to him and pushed up his head, looked at him, and hollered, "Steve." Then Gustin and Dineen left the room and went into the back room where McDonald went when he first entered the place.

There was also present one Thomas Curran who testified as a witness for the Commonwealth, in substance, as follows: After some talk in the back room between Dineen, Gustin and Demboski as to whether McDonald was or was not a police officer, who "pinched us a couple of years ago and gave us an awful beating at the station house," Gustin sent Curran from the kitchen into the front room to ask McDonald if he wanted a drink. Thereupon Curran went to the front room and asked McDonald if he wanted another drink, and McDonald answered, "Yes." Curran went back to the kitchen and told Gustin that McDonald "wanted a drink." Gustin told Curran to get "the glass and bottle that was . . . on the table" in the front room. Curran went in, picked up the glass and bottle and took them into the kitchen. As he went to pass the glass and bottle to

Gustin, Dineen took them and Gustin "says 'Give me that.'" As Dineen was going to give the bottle to Gustin, Dineen said, "I wish I had some arsenic"; Gustin then walked over to the table with the bottle and said, "I've got something that is just as good," put his hand in his pocket and took out a small container and said in the presence of Demboski and Dineen, "This will fix him good." He then told Curran to go into the front room and keep McDonald company. Curran did as he was told and in "three or four minutes" Gustin, Dineen and Demboski came into the front room. Dineen held the glass. He walked over to McDonald and said, "Here is your drink." McDonald said, "Thanks," took the glass, "drank part of the drink and laid it on the table." Then he picked up the glass and drank the rest of it. He became unconscious about four or five minutes after he took the second drink. While he was in this condition Demboski put some matches into McDonald's shoe, lit them, and let them burn right down to the leather. McDonald gave no sign except "to uncross his feet and put them on the floor." Thereupon Dineen, Gustin, Demboski and Francis Sullivan (the four persons named in the indictment) seized McDonald and dragged him to the head of the stairway outside the front room. They then lifted him, pointed him head first, face downward, and threw him down the flight of stairs leading to the first floor. He landed five steps from the bottom. Dineen and Gustin followed down the steps and pushed and kicked McDonald the rest of the way to the first floor. They then had a consultation as to what should be done with McDonald, and then proceeded downstairs, where they found McDonald at the end of the hallway; they took him outside, put him in the automobile of Gustin, carried him to a point beyond the Economy company warehouse on D Street, South Boston, where he was found by officers, and taken to the City Hospital.

We now consider the assignments of error. The first assignment of error is based on exception 1, and pertains to the action of the judge in locking up the jury with no reasons offered save a request of the district attorney. The

defendants do not deny that the judge in his discretion may keep a jury locked up during a trial, but contend that he should not act without evidence to prove the necessity of so doing and that the order in the instant case had the effect to "cast an atmosphere of suspicion and guilt upon the defendants, and deprived them of the right to a fair trial without the claptrap of terrorism and danger." There is nothing in the record to indicate in any degree that the action of the judge was wilful or, in the circumstances, exercised arbitrarily to the prejudice of the defendants. *Davis* v. *Boston Elevated Railway*, 235 Mass. 482, 496. *Commonwealth* v. *Gallo*, 275 Mass. 320, 328. *Commonwealth* v. *Snyder*, 282 Mass. 401, 410. There was no error.

The second, third, fourth and fifth assignments of error are based on exceptions 3, 4, 5 and 6 relating to evidence offered by the Commonwealth to show that McDonald had arrested Gustin and Dineen on a previous occasion and that Gustin and Dineen were together when they were previously arrested. The Commonwealth contends that the evidence admitted disclosed an inference of ill will and hostile feeling by them toward McDonald, and this tended to establish a motive for the assault. The defendants contend that the motive in the crime charged was immaterial and incompetent because the physical facts and assaults and various acts of unlawful beating had been introduced in testimony. It is to be noted that the judge received the evidence of alleged motive "out of order" and stated "If no evidence is put in to make it material I will strike it out." It appears that no request was made by the defendants to strike out the testimony before the case was sent to the jury, and there is nothing in the record to indicate that the judge's attention was directed again to the defendants' contention that the admitted evidence was not material and to the statement of the judge that if it was not material "I will strike it out." In these circumstances, whether or not the evidence had any probative value which made it admissible in evidence, there was no reversible error. *Commonwealth* v. *Sacco*, 255 Mass. 369, 407. *Commonwealth* v. *Knight*, 257 Mass. 421, 424.

Assignments of error 6, 7 and 8 are based on exceptions 12, 13 and 14. These exceptions relate to the admissibility of a certain conversation in the absence of the defendants. There is no merit in these exceptions. The judge stated that he would allow only so much of the conversation "as bears on the question of time to stand," that the rest of the conversation was "entirely incompetent," and, addressing the jury, said: "That is admitted, gentlemen, for the sole purpose of fixing the time. The rest of it you should disregard."

The ninth assignment of error based on exception 16 relating to a conversation between the witness Curran and Gustin respecting Gustin's automobile was waived at the hearing before the full court.

The above assignments of error cover the defendants' exceptions to the admission of evidence.

The tenth and eleventh assignments of error are based on exception 22 and on the denial of the motion to revoke and vacate sentences, and are in fact one and the same, to wit, that the judge has no power to sentence the defendants to State prison on the verdict of the jury that the defendants were guilty of "assault with intent to kill." The defendants were indicted under G. L. (Ter. Ed.) c. 265, § 15, which provides: "Whoever assaults another with intent to commit murder, or to maim or disfigure his person in any way described in the preceding section, shall be punished by imprisonment in the state prison for not more than ten years or by a fine of not more than one thousand dollars and imprisonment in jail for not more than two and one half years." The defendants contend that the words "with intent to kill" are at most words of aggravation and that the defendants were guilty at most of a misdemeanor. They rely upon the statement of the court in *Commonwealth v. Barlow*, 4 Mass. 439, wherein it is said that "anciently, an attempt to commit murder was held to be a felony at common law . . . but that when *Staundforde* wrote, and ever since, the attempt only has not been considered as a felony, but as a misdemeanor highly aggravated." Seemingly to cure this situation the Legislature

in 1836 enacted Rev. Sts. c. 125, § 23, which reads: "If any person shall assault another with intent to commit any burglary, robbery, rape, manslaughter, mayhem or any felony, the punishment of which assault is not herein before prescribed, he shall be punished by imprisonment in the state prison, not more than ten years, or by fine not exceeding one thousand dollars, and imprisonment in the county jail, not more than three years." This statute was reënacted in like terms in Gen. Sts. c. 160, § 33, and Pub. Sts. c. 202, § 33. In R. L. c. 207, § 29, it was provided with marginal references to Rev. Sts. c. 125, § 23, Gen. Sts. c. 160, § 33, and Pub. Sts. c. 202, § 33, as follows: "Whoever assaults another with intent to commit a felony shall, if the punishment of such assault is not hereinbefore provided, be punished by imprisonment in the state prison for not more than ten years or by a fine of not more than one thousand dollars and imprisonment in jail for not more than three years." This statute now appears in G. L. (Ter. Ed.) c. 265, § 29. In St. 1804, c. 123, § 3, St. 1818, c. 124, § 2, Rev. Sts. c. 125, § 9, and G. L. (Ter. Ed.) c. 265, § 13, it is provided in substance that "Whoever commits manslaughter shall be punished by imprisonment in the state prison for not more than twenty years or by a fine of not more than one thousand dollars and imprisonment in jail for not more than two and one half years."

The crime of manslaughter imports the taking of human life by an act not justified in law, but without malice aforethought which is necessary to constitute murder. *Commonwealth* v. *Carey,* 12 Cush. 246, 251. *Commonwealth* v. *McLaughlin,* 12 Cush. 615. There is a difference between the intent to kill and an intent to murder; and the former may exist when one intends only such killing as amounts to manslaughter. An assault with intent to commit murder and an assault with intent to commit manslaughter are made felonies by statute in this Commonwealth. G. L. (Ter. Ed.) c. 265, §§ 15, 29. See G. L. (Ter. Ed.) c. 274, § 1; *Commonwealth* v. *Carey,* 12 Cush. 246. This differentiation is not clearly discussed in any case in this Commonwealth. *Commonwealth* v. *Reynolds,* 120 Mass. 190, seem-

ingly is authority for the contention that there is a crime which may be described as "an assault with intent to kill," but the indictment charged the defendant with an "assault with a gun . . . with intent to kill." We therefore put that case to one side as not an authority in the case at bar.

The principle that one indicted for assault with intent to murder may be convicted of assault with intent to kill was sustained in *State* v. *Mosca,* 90 Conn. 381. In *State* v. *Butman,* 42 N. H. 490, under the Rev. Sts. of N. H. c. 214, which provides for the punishment of manslaughter by life imprisonment in some cases, it was contended by the defendant therein that he could not be convicted of an assault with intent to kill only because the words, intent to kill, exclude the idea of manslaughter, which is a killing without design to effect death, and the court speaking through the Chief Justice said at page 493: "That there is neither in law nor in the understanding of the community, any inconsistency in the idea of a design to kill with the nature of the crime of manslaughter, seems apparent from the provisions of the Revised Statutes of Maine, Massachusetts and New-York, which provide, in terms, for the punishment of assaults with intent to commit manslaughter. Whart. Cr. Law 550, 551; Mass. Gen. Laws of 1860, 794, sec. 33." The court further said: "We are of opinion that, under this indictment, if the evidence shows an intent to kill under such circumstances as to constitute a murder, if death had followed, the party may be convicted of assault with intent to murder. If the offense, if completed, would be manslaughter only, the party may be convicted of an assault with intent to kill only, or may be convicted of an assault only." *State* v. *Butman,* 42 N. H. 490, is on all fours with the case at bar. G. L. (Ter. Ed.) c. 265, § 29, corresponds with Rev. Sts. of N. H. c. 214, § 8; see also *State* v. *Greenleaf,* 71 N. H. 606, 612, in accord. This case is also authority for holding that in the case at bar the defendants have been convicted of assault with intent to commit manslaughter punishable as a separate crime under G. L. (Ter. Ed.) c. 265, § 29, which carries the same penalty as G. L. (Ter.

Ed.) c. 265, § 15, dealing with assault with intent to murder. Statutes similar to G. L. (Ter. Ed.) c. 265, § 29, have been construed to embrace and comprehend an assault with intent to commit manslaughter in States other than New Hampshire. *State* v. *McGuire*, 87 Iowa, 142. *State* v. *Bunn*, 195 Iowa, 9. *Griffin* v. *State*, 72 Fla. 79. *Dean* v. *State*, 78 Fla. 545. In *State* v. *Cain*, 150 La. 128, it was held that upon an indictment charging shooting with intent to kill and murder the defendant may be convicted of shooting with intent to kill. There is nothing in *Commonwealth* v. *Clarke*, 162 Mass. 495, inconsistent with the conclusion here reached, that a defendant charged in an indictment with an assault to commit murder may be found guilty of so much of the indictment as charges an assault with intent to kill.

*Judgments affirmed.*