ALUMINUM SMELTERS INC. *vs.* HAROLD M. TWOMBLY.

,Suffolk.   November 4, 1953. — December 3, 1953.

Present: QUA, C.J., WILKINS, SPALDING, WILLIAMS, & COUNIHAN, JJ.

*Sale,* Parties.

In an action for goods sold and delivered, a finding that the defendant, an individual doing business under a company name, rather than a certain corporation, was the party accepted by the plaintiff as debtor and was liable was warranted by excerpts from the plaintiff's books in evidence charging the defendant for the goods and never changed and by correspondence in evidence, even if the defendant denied liability from the time of delivery, the only payment on account ever made was made by the corporation, and at its request the plaintiff on one occasion sent it a revised invoice for the goods reading "Sold to" it.

CONTRACT.   Writ in the Superior Court dated April 21, 1949.

The action was tried before *Broadhurst,* J.

*James J. Gaffney,* for the defendant.

*S. Roy Remar,* for the plaintiff.

WILKINS, J.   In this action of contract for goods sold and delivered, there was a verdict for the plaintiff. The question presented by the defendant's exceptions is the correctness of the judge's denial of the defendant's motion for a directed verdict.

It was agreed that the goods, which consisted of aluminum alloy ingots, were delivered at 380 Amory Street, Jamaica Plain, and that the total charge was fair and reasonable.

The issue is whether the party liable is the defendant, who operated a sand casting business as Amory Foundry Company at 380 Amory Street, or Amory Permanent Mold Co., Inc., a Massachusetts corporation, whose address was 366 Amory Street, and which has ceased to do business and is no longer in existence.

The defendant, called by the plaintiff, testified that in 1945 the corporation was formed by the defendant and four others to make castings by a permanent mold method; that the defendant had a minority stock interest, did no buying for the corporation, and took no part in its management; that the corporation conducted its business in a building located on land purchased from the defendant; that it had no office facilities, and hired from the defendant office space, telephone, and clerical service at 380 Amory Street; that the name "Amory Foundry Company" appeared on a sign over the place of business of the defendant, but that there was no sign on the building owned by the corporation; that there was a gate on the premises of the Amory Foundry Company which also led to the premises of the corporation without any fence or other obstruction; and that the corporation had a separate checking account.

One Lapides, the plaintiff's first witness, testified that he was assistant treasurer of the plaintiff, a Connecticut corporation, with offices in New Haven; that he was in charge of its books and records; that the records were kept in the usual course of business and showed that an invoice had been drawn dated in January, 1947, indicating a sale to Amory Foundry Company at 380 Amory Street of 20,103 pounds of number 43 aluminum alloy ingots at $18\frac{1}{2}$ cents a pound, totaling $3,719.05; that the practice of the plaintiff upon the receipt of an order was to make out a sales slip; that this was done in this case; and that the original invoice went to the defendant, a copy was sent to the trucking company, Bay State Motor Express Co., and a copy was retained by the plaintiff.

Lapides further testified that one Batchelder, a former salesman of the plaintiff, told him to ship to the Amory

Foundry 20,000 pounds of number 43 aluminum alloy ingots. Counsel for the defendant then asked that the testimony be struck out as hearsay in the event that Batchelder did not confirm it. Counsel for the plaintiff asked that it be admitted de bene. The judge thereupon said: "The jury heard the answer. Yes, it may with the suggestion of Mr. Gaffney that it be stricken from the case if Mr. Batchelder does not appear to say so himself." Batchelder did not later appear as a witness, but no motion to strike out was made by the defendant. The plaintiff contends that the testimony is in the case for all purposes. *Commonwealth* v. *Demboski,* 283 Mass. 315, 320. *Shannon* v. *Ramsey,* 288 Mass. 543, 550. *Commonwealth* v. *Sheppard,* 313 Mass. 590, 596.

Even disregarding the testimony which was admitted de bene, the plaintiff had enough to go to the jury in its books of account. G. L. (Ter. Ed.) c. 233, § 78. *Lyman B. Brooks Co.* v. *Wilson,* 218 Mass. 205, 208–209. *Sellew* v. *Tuttle's Millinery Inc.* 319 Mass. 368, 371. "Such records form some evidence that the party charged is the one liable." *W. W. Britton Inc.* v. *S. M. Hill Co.* 327 Mass. 335, 338. There were admitted in evidence without objection a page from the plaintiff's sales journal showing a charge against "Amory Foundry" for $3,719.05 on January 25, 1947; a page from the plaintiff's accounts receivable ledger in the name of "Amory Foundry," showing a debit of $3,719.05 on January 25, 1947, and a credit in March of $800; and the plaintiff's copy of the bill of lading naming "Amory Foundry" as the consignee. It was agreed that the corporation made the payment on account on March 4, 1947.

The defendant not only denies ordering the goods, but contends that he denied liability from the time of delivery, and that as a result the plaintiff accepted the corporation as its debtor. On January 28, 1947, the corporation on its own letterhead wrote the plaintiff: "In checking your invoice of January 25 we find that it should be charged to the above concern rather than Amory Foundry. Will you kindly send us a corrected invoice." The letter was signed

in the name of the corporation by R. Boutilier, who testified that he was office manager for the defendant, and was paid by both the defendant and the corporation. On February 3, 1947, Batchelder on behalf of the plaintiff wrote the corporation, attention of Boutilier: "Your letter of January 28th received and we find that the Amory Permanent Mold Co., Inc. is not rated in Dun and Bradstreet, whereas the Amory Foundry is rated. We feel that unless there is some very specific reason for having our invoice changed, that to protect ourselves on the facts as known to us, we would prefer to leave the billing as before. If, however, you cannot accept the billing in this form, please advise us the reason and the financial status of the Amory Permanent Mold Co., Inc. I hope that this will meet with your approval and we are enclosing the invoice previously mailed to you." On February 5, 1947, the corporation in a letter signed by Boutilier addressed to the plaintiff said: "In reply to your letter of February 3, we wish to advise that the metal furnished on your invoice of January 25 is for the exclusive use of the Amory Permanent Mold Company and has actually no connection with the Amory Foundry. We are accordingly returning your invoice for correction since there is no possible way for this charge to be entered by the Amory Foundry Company." About February 18, 1947, the corporation received from the plaintiff an invoice dated January 25, 1947, reading: "Sold to Amory Permanent Mold Co., Inc. 366 Amory Street Jamaica Plain 30, Mass. Terms Net 30 days No Discount #43 Aluminum Alloy Ingots 20103# .18½ $3719.05."

There was evidence from Lapides that the plaintiff's books of account were not changed in any way, and that the account was always charged to the defendant.

Later letters were in evidence. On April 9, 1947, the plaintiff by Batchelder wrote "Amory Foundry Co. 380 Amory Street Jamaica Plain, Mass. Att: Mr. H. M. Twombly": "This telephone strike has undoubtedly prevented you from calling us this week, but we would greatly appreciate receiving word from you as to how soon you can clean up your

account.  My accounting department said they did not like
the idea of a note as you stated in our last conversation.
Please write us as soon as possible advising the situation of ·
this account."  On April 11, 1947, the corporation by one
Little wrote the plaintiff: "Your letter of April 9 to Mr.
Twombly has been turned over to me for further consid-
eration.  As Harold has probably explained to you we are
at the moment in a rather embarrassing financial position
due to a 'stop order' from our largest account.  We are
presently, however, getting into production on some other
long run work and expect to be in a better position finan-
cially within the next 30–60 days.  This is the reason Harold
requested that you discuss the possibility of a note with
your firm in order to allow us a short breathing period until
these jobs really get under way.  We shall, however, in the
interim period be glad to send you whatever small amounts
we can to further clear up this account."  On November
26, 1947, the plaintiff was sent the following letter signed
"Amory Foundry Company      H. M. Twombly": "We
wish to acknowledge receipt of your letter of November 25
and to advise that Mr. Gaffney, our counsel is still working
on this matter with some of the other creditors and by the
middle of next week you will undoubtedly hear from him
and he will be glad to see that you obtain the necessary in-
formation regarding creditors.  In regard to the metal, we
have not made any purchase since you were here and prob-
ably will not for some time, inasmuch as the molds are still
in the experimental stage and we do not require production
quantities of metal.  You will hear from us, however, when
this matter comes up."

A truck driver for Bay State Motor Express Co. testified
that he delivered the goods on January 27, 1947, at 380
Amory Street; that the goods were unloaded with the help
of two men on the premises; that the goods were receipted
for by Boutilier, "the manager of the defendant's business,"
who told him "the goods go in here"; that the delivery re-
ceipt given to the express company was signed "Amory
Permanent Mold Co. by R. Boutilier"; that Boutilier told

the driver to write in the name "Amory Permanent Mold" as consignee in place of "Amory Foundry Co."; that the driver replied, "Well, this is Amory Foundry," and Boutilier answered, "It is all one and the same company, but Amory Permanent Mold is receiving the ingots"; and that the driver then wrote the words "Amory Permanent Mold" and the symbol "c/o" over the original name of the consignee. The defendant testified that neither he nor Amory Foundry Company ever replied to any bill, statement, or claim of the plaintiff; and that Boutilier had complete authority to receive the goods and to do anything in the place he wished.

The evidence does not show as matter of law that the plaintiff adopted the defendant's contention that the corporation was the debtor. There was an issue of fact for the jury. The later invoice made out to the corporation and received by it about February 18, 1947, was at most an admission, which was not conclusive. *Niles* v. *Adams*, 208 Mass. 100, 103. *Powers* v. *Macris*, 314 Mass. 260, 262. *Nelson's Express & Warehouse Co. Inc.* v. *Alexander Grant & Son, Inc.* 320 Mass. 317, 318. The jury could find that the party charged in the plaintiff's books of account was the one liable; that that charge was against the defendant and, as testified by Lapides, was never changed. Moreover, the later correspondence, which permitted a finding that the plaintiff was continuing to bill the defendant, was corroborative.

*Exceptions overruled.*