COMMONWEALTH *vs.* LEWIS J. WEST, JR.

Suffolk. February 2, 1970. — April 10, 1970.

Present: WILKINS, C.J., SPALDING, KIRK, SPIEGEL, & REARDON, JJ.

*Evidence*, Firearm, Prior conviction, Judicial discretion. *Witness*, Impeachment. *Assault*. *Words*, "May."

At the trial of indictments arising out of an armed robbery, where there was evidence that a police officer was shot by a gun using thirty-eight calibre cartridges, there was no error prejudicial to the defendant in the admission of testimony referring to a thirty-eight calibre pistol, which was not the gun used in the shooting, produced by the defendant, together with cartridges therefor, two days after the shooting and used by him and others in "target practicing." [247–248]

The option expressed in G. L. c. 233, § 21, that the conviction of a witness of a crime "may" be shown to affect his credibility, is an option open only to a party cross-examining the witness; a trial judge is not

clothed with discretion to receive or exclude such evidence but must receive it if it is offered. [249]

At a criminal trial in which the defendant did not testify, the judge rightly denied both a request by the defendant for a ruling that if he elected to testify his prior convictions of crime would not be received in evidence to impeach his credibility and a subsequent request by him for a ruling that if he elected to testify only one of his prior convictions would be received. [248, 249]

At the trial of an indictment for assault with intent to murder, where the judge in his original charge and in his reply to a request by the jury for further instructions stated in substance that the Commonwealth must prove beyond a reasonable doubt that the defendant had the "specific intent to murder," there was no error in refusing to give additional instructions on intent to murder. [249–250]

INDICTMENTS found and returned in the Superior Court on December 18, 1968.

The cases were tried before *Macaulay*, J.

*Reuben Goodman* for the defendant.

*William J. Doyle*, Assistant District Attorney, for the Commonwealth.

SPALDING, J.    These are appeals under G. L. c. 278, §§ 33A–33H, from convictions on three indictments charging the defendant, respectively, with armed robbery, assault with intent to murder, and assault and battery by means of a dangerous weapon.   The indictments arise out of the robbery of a savings and loan association in Boston on October 10, 1968, in which Paul F. Curley, a police officer, was shot twice by the fleeing robber.

We summarize so much of the testimony as is necessary to furnish a background for the questions presented.   One Mary J. Burns, a bank teller, testified that at 1 P.M. on October 10 a tall stoop-shouldered man wearing black sunglasses pointed a gun at her and told her to fill a paper bag with money.   As the man was walking toward the door, she signaled to a police officer who had just entered.   The man then pulled his gun and shot the officer twice.   The witness identified the defendant as the man who had robbed her and shot the officer.

Officer Curley testified that on October 10, while entering the bank to talk to an employee, his attention was attracted

by a motion made by a teller, Mary Burns. As he turned partly around, "there was a flash and a bang." He observed on the right side of him, from where the flash had come, a white male about 6' 1" in height with a paper bag. The witness testified he then got a "bang" in the chest and "[he] thought the top of [his] head was off," and he fell to the floor.

The head teller of the bank, John Sylvestro, testified that he was in the bank and saw a man at the teller's window wearing a black leather three-quarter length jacket and black sunglasses. He saw this man shoot Officer Curley.

One Robert Carroll, the defendant's brother-in-law, who lived in Baldwin Park, California, testified that on October 11 the defendant called him from a Los Angeles bus depot. He further testified that the defendant later showed him a big wad of money, was dressed all in black, and referred to himself several times in conversation as "Boston Blackie." Carroll's two nephews, Solomon and Lonnie Travis, testified that on October 12 in Baldwin Park the defendant produced a thirty-eight calibre pistol and some thirty to fifty thirty-eight shells, which they (the defendant and Solomon and Lonnie) used for "target practicing." The defendant told them that "he had shot a cop in the back of the head and he didn't know whether he was alive or dead."

The defendant alleges that the judge erred (1) in admitting testimony concerning the thirty-eight calibre pistol (assignment of error No. 3); (2) in refusing to exclude or limit the introduction of the defendant's prior convictions in the event he elected to testify (assignments of error Nos. 4 and 5); and (3) in his instructions on assault with intent to murder (assignment of error No. 7).

1. In the course of the pre-trial hearing and the Commonwealth's opening statement, the prosecutor stipulated that the thirty-eight calibre gun mentioned by the Travises was not the one used to shoot Curley. The testimony of Lonnie Travis concerning the thirty-eight calibre gun was the subject of a motion to strike by the defendant. To the denial

of this motion and to the overruling of his objection to Solomon Travis's testimony concerning the gun, the defendant excepted.    He invokes the rule that weapons found in the possession of a defendant are admissible only if they might have been used in the commission of the crime charged.  *Commonwealth* v. *O'Toole*, 326 Mass. 35, 39.  *Commonwealth* v. *McLaughlin*, 352 Mass. 218, 229–230.  Otherwise an inference that a defendant has vicious and dangerous propensities might be drawn that would be prejudicial to him.    While we agree that evidence of weapons unrelated to the commission of the crime under consideration may in some circumstances be prejudicial, we do not here find the likelihood of such prejudice.   The defendant did not — and does not now — object to the testimony regarding the target practice, or the shells.   Indeed, as to the latter there would be no basis for such an objection, for there was evidence that the cartridges used in the shooting of Officer Curley were thirty-eight calibre.   The defendant objects only to the reference to the gun.   The testimony regarding target practice, by necessary implication, imported the use of firearms and ammunition.   The mention, that a pistol in the possession of the defendant was used added little or nothing, and it is difficult to see how it could have been prejudicial.

2. The defendant did not testify.   At the conclusion of the Commonwealth's case, the defendant presented a motion asking the court to rule that if he elected to testify his prior convictions would not be received in evidence for impeachment purposes.   The defendant indicated that he would testify but only if the prior convictions were excluded.   The prosecutor opposed the motion, stating that the defendant had six records of convictions, all for robbery, which he intended to introduce if the defendant took the stand.   The judge expressed doubt as to whether he had any discretion to exclude this evidence but, if he did, he would not exercise it in the defendant's favor in the circumstances.   The motion was denied, subject to the defendant's exception.   The defendant then requested a ruling that if

he took the stand the prosecution would be permitted to introduce only one record of conviction. This request was denied, subject to the defendant's exception.

The admissibility of prior convictions to affect credibility is governed by G. L. c. 233, § 21, which, in pertinent part, reads, "The conviction of a witness of a crime *may* be shown to affect his credibility" subject to certain exceptions not here material (emphasis supplied). Where the accused takes the stand on his own behalf he renders himself liable to cross-examination on all matters relevant to the crime with which he is charged, and he may be impeached or discredited like other witnesses. *Commonwealth* v. *Sullivan*, 150 Mass. 315, 317. *Jones* v. *Commonwealth*, 327 Mass. 491, 493–494. One of the methods of impeachment is by proof of prior convictions in the manner prescribed by § 21. When that section states that a prior conviction of a witness "may be shown" it is speaking of an option open to the party cross-examining the witness. The word "may" in the statute does not clothe the judge with discretion to receive or exclude this sort of evidence. The right to introduce it or not belongs to the cross-examiner, but he is not obliged to offer it, and that is why the statute used the word "may" instead of "shall." This precise question under a similarly worded statute recently came before the Supreme Court of New Jersey and it held that the option to introduce such testimony belonged solely to the parties and, when exercised, the court must receive the evidence. *State* v. *Hawthorne*, 49 N. J. 130, 135. There is a dictum to the contrary by a majority of the court in *Luck* v. *United States*, 348 F. 2d 763 (Ct. App. D. C.). But see dissenting opinion of Danaher, J., in that case at pp. 769–771. We are of opinion that the reasoning in the *Hawthorne* case is more persuasive. It follows that there was no error in refusing either to exclude the convictions or to limit the number that could be introduced.

3. The defendant argues that the jury were inadequately instructed on the elements of the crime of assault with intent to murder. More especially, he contends that the in-

structions were confusing on the requirement of specific intent to kill, and that the court erred in refusing to clarify this point when asked by the jury for additional instructions. We disagree. In the original instructions the judge told the jury that "[t]he Commonwealth must prove beyond a reasonable doubt . . . that the defendant had the specific intent to murder Paul Curley." Subsequently, in response to the jury's request for further instructions on the issue of "intent to murder" the judge in substance repeated what he had said in his original charge. There was no error.

*Judgments affirmed.*