COMMONWEALTH *vs.* STEVEN ENNIS.

Middlesex. March 4, 1986. — August 7, 1986.

Present: HENNESSEY, C.J., WILKINS, NOLAN, LYNCH, & O'CONNOR, JJ.

*Practice, Criminal,* Retroactivity of judicial holding, Instructions to jury. *Assault with Intent to Murder. Malice. Intent.*

The holding of this court in *Commonwealth* v. *Henson,* 394 Mass. 584 (1985), with respect to the state of mind required for a conviction of assault with intent to murder, being in accord with past decisional authority, as well as being a judicial interpretation of the meaning of G. L. c. 265, § 18(*b*), was to be given retroactive application. [173-175] O'CONNOR, J., concurring in this view, based his conclusion on the fact that the court was interpreting a statute, and not on principles governing the retroactivity of decisional law. [180-181]

At the trial of indictments charging armed assault with intent to murder, the judge's instructions to the jury, in which he repeatedly and correctly stated that a specific intent to kill was required for conviction, did not create a substantial likelihood of a miscarriage of justice, even though the judge also charged the jury in terms of murder, with a definition of malice less specific than the state of mind needed for conviction of assault with intent to murder. [176-178] O'CONNOR, J., dissenting.

INDICTMENTS found and returned in the Superior Court Department on March 29, 1983.

The cases were tried before *Robert A. Barton,* J.

After review by the Appeals Court, the Supreme Judicial Court granted leave to obtain further appellate review.

*Maureen B. Brodoff,* Committee for Public Counsel Services, for the defendant.

*Margot Botsford,* Assistant District Attorney (*Natalea Skvir,* Assistant District Attorney, with her) for the Commonwealth.

LYNCH, J. In November, 1983, the defendant,[1] after a jury trial, was convicted of three charges of assault while armed

[1] The defendant was tried with a codefendant, who was also convicted of some of the same charges.

with a dangerous weapon, with intent to murder, see G. L. c. 265, § 18 (*b*) (1984 ed.), one charge of armed robbery, and a variety of other charges.[2] He was sentenced to the Massachusetts Correctional Institution at Cedar Junction for a term of eighteen to twenty years for each conviction for assault while armed with a dangerous weapon, with intent to murder, and for a term of twenty to thirty years for the armed robbery,[3] all sentences to be served concurrently. The defendant appealed only the convictions for assault while armed with a dangerous weapon, with intent to murder, and the Appeals Court reversed those convictions. *Commonwealth* v. *Ennis,* 20 Mass. App. Ct. 263 (1985). We granted the Commonwealth's application for further appellate review and affirm the convictions.

The indictments for assault while armed with a dangerous weapon, with intent to murder, arose out of a high speed chase which followed the armed robbery of a pharmacy in Winchester in 1983. The defendant and his partner fled the pharmacy in a yellow Volkswagen automobile, pursued by the police. When they finally stopped, a Winchester police officer approached the Volkswagen with his service revolver pointed at the driver, and ordered him, the only person he could see in the car, to get out and put up his hands. The defendant then popped up from the rear seat and pointed a gun at the police officer, who dropped down beside the car for protection. As the officer went down, the rear window of the Volkswagen shattered, the officer "heard a pop," and something struck him on the forehead.[4] The Volkswagen then sped away and the officer

---

[2] He was also convicted of one charge of assault and battery by means of a dangerous weapon, two charges of assault by means of a dangerous weapon, and one charge of carrying a firearm.

[3] The defendant also received sentences of three to five years for the conviction of unlawfully carrying a firearm. With the defendant's consent, the judge ordered the convictions for assault and battery with a dangerous weapon, and for assault with a dangerous weapon, placed on file.

[4] The officer sustained a slight abrasion over one eye. It is unclear whether the window was first broken and then a shot was fired, or if a shot was fired directly through the window, breaking it. Defense counsel argued to the jury that the cut was probably caused not by a bullet, but by the flying glass.

resumed the chase, with other police joining in. The Volkswagen then approached an officer on traffic duty who had his revolver drawn, having been advised to look out for the car. The defendant fired a shot at him through the windshield of the Volkswagen. The traffic officer "shot one round off" at the rear of the Volkswagen, but the car continued on down the street. As the Volkswagen crossed an intersection in Woburn, a third police officer rammed it with his police car. The Volkswagen's occupants left the car and began to run. After the third officer left his cruiser, drew his revolver, and ordered the suspects to "halt," the defendant turned and fired several shots at him. The officer returned the fire and struck the defendant.

The defendant's appeal was based solely on the judge's instructions to the jury concerning the state of mind necessary for the commission of assault while armed with a dangerous weapon, with intent to murder. The defendant particularly objected to the judge's treatment of the element of specific intent to kill, and argued that the charge permitted the jury to convict without finding an intent to kill. The Appeals Court, applying *Commonwealth* v. *Henson,* 394 Mass. 584, 590-592 (1985),[5] see *Commonwealth* v. *Ennis, supra* at 265-268, agreed, and held that the judge's instructions on malice, and the structure of the judge's charge, created a substantial risk of a miscarriage of justice. *Id.* at 269. The Commonwealth now argues that *Commonwealth* v. *Henson, supra,* is not to be applied retroactively, and that even if *Henson* is so applied, the judge's charge did not create a substantial risk of a miscarriage of justice. Although we conclude that *Henson* is retroactive and thus governs the instant case, we agree that there was no substantial risk of a miscarriage of justice. Accordingly, we affirm the convictions.

---

[5] *Commonwealth* v. *Henson,* 394 Mass. 584 (1985), was decided on April 18, 1985, about one and one-half years after the defendant in the case at bar was tried, and after both parties in *Ennis* had submitted their briefs to the Appeals Court, but before oral argument before that court. The defendant did note in his Appeals Court brief that *Henson* had already been argued before this court, and was pending.

1. In *Henson, id.* at 590-593, we considered the intent the Commonwealth must prove to demonstrate that a defendant committed an assault with intent to murder.[6] The judge had, in effect, charged the jury that "if malice aforethought was proved beyond a reasonable doubt, the intent necessary to prove assault with the intent to murder would be established." We noted that this charge "required the Commonwealth to prove only malice that would support a conviction of murder in the second degree." *Id.* at 590. We held that, in addition to malice, the crime of assault with intent to murder requires proof of a specific intent to kill. *Henson* also stated that malice "in this instance means only absence of justification, excuse, and mitigation." *Id.* at 590, 591.

In determining whether an opinion concerning "decisional law" is retroactive, the threshold question is whether the opinion announced a "new rule." *Commonwealth* v. *Breese,* 389 Mass. 540, 541 (1983). "Decisional law usually is retroactive." *Commonwealth* v. *Paszko,* 391 Mass. 164, 179-180 (1984), quoting *Commonwealth* v. *Breese, supra.* It is when an opinion announces a new rule that "the issue arises whether it will be applied only prospectively." *Breese, supra.* Thus, assuming Henson to be a pronouncement of decisional law, see *Henson, supra* at 591, (referring to assault with intent to murder as a "common law crime"), we must resolve whether *Henson* announced a new rule.

We have recognized that, for a rule to be considered "new," it "must establish a new principle of law, either by overruling clear past precedent on which litigants may have relied . . . or by deciding an issue of first impression whose resolution was not clearly foreshadowed . . . ." *Id.* at 542, quoting *Chevron Oil Co.* v. *Huson,* 404 U.S. 97, 106 (1971). For a decision to be applied only prospectively, it must represent "a clear break with the past," *Desist* v. *United States,* 394 U.S. 244, 248 (1969), and a question of nonretroactive application

---

[6] *Henson, supra* at 590, concerned both assault while armed with a dangerous weapon, with intent to murder, G. L. c. 265, § 18 (*b*), and assault with intent to murder, G. L. c. 265, § 15 (1984 ed.).

of a decision is not presented unless it "constitute[s] a sharp break in the line of earlier authority or an avulsive change which causes the current of the law thereafter to flow between new banks," *Hanover Shoe, Inc.* v. *United Shoe Mach. Corp.,* 392 U.S. 481, 499 (1968). See *Commonwealth* v. *Breese, supra.* A decision may also establish a new rule if it overturns a "longstanding and widespread practice to which [a high court] has not spoken, but which a near-unanimous body of lower court authority has expressly approved." *United States* v. *Johnson,* 457 U.S. 537, 551, 552-553 (1982), and cases cited. Cf. *Solem* v. *Stumes,* 465 U.S. 638, 646-648 (1984) (case which established "bright-line" rule safeguarding preexisting rights constitutes "new rule" where it overturned practice approved of by some lower courts, and where other lower courts disapproved of the practice or acknowledged that the constitutionality of the practice was unsettled).

The Commonwealth contends that by "adding . . . a requirement of a specific intent to kill [to the crime of assault with intent to murder], *Henson* announced a new rule." We disagree. By "explicitly" defining "intent to murder," *Henson,* 394 Mass. at 591, *Henson* did not "add" a new requirement to the elements of this crime. *Henson's* holding that "intent to murder" means, in the context of this offense, a specific intent to kill, was foreshadowed by prior case law. See *Commonwealth* v. *Breese, supra* at 542. As *Henson* itself notes, this court had previously held that G. L. c. 265, § 18, required the Commonwealth to prove a specific intent to murder. *Commonwealth* v. *Henson, supra* at 591. See *Commonwealth* v. *Lopez,* 383 Mass. 497, 500 (1981); *Salemme* v. *Commonwealth,* 370 Mass. 421, 424 (1976). See also *Commonwealth* v. *West,* 357 Mass. 245, 249-250 (1970), overruled on other grounds, *Commonwealth* v. *Maguire,* 392 Mass. 466, 470 (1984). The requirement of a specific intent to kill as an element of assault with intent to kill had been clearly recognized prior to *Henson.* See *Commonwealth* v. *Henson, supra,* and cases cited. Assault with intent to kill is a crime long understood to be a lesser included offense within the crime of assault with intent to murder. *Id.* See *Commonwealth* v. *Demboski,* 283 Mass. 315, 322 (1933). See

also *Commonwealth* v. *Hebert,* 373 Mass. 535, 538 (1977). In addition, the specific intent to kill was recognized as an element of assault with intent to murder in *Commonwealth* v. *Richards,* 363 Mass. 299, 307 & n.3 (1973). We note as well that in stating that the "general view of the common law crime of assault with intent to murder is consistent with our view that the prosecutor must prove a specific intent to kill," *Commonwealth* v. *Henson, supra* at 591-592, and authority cited, the court did not suggest that past Massachusetts decisional authority in this area deviated from this general view.

Our reference in *Henson* to malice as "in this instance mean[ing] . . . absence of justification, excuse, and mitigation," *id.* at 591, was no more than an observation, flowing logically and predictably from the requirement of a specific intent to kill, that the two other prongs of malice: intent to do grievous bodily harm, *Commonwealth* v. *Huot,* 380 Mass. 403, 408 (1980); and "knowledge of such circumstances that according to common experience there is a plain and strong likelihood that death will follow the contemplated act," *Commonwealth* v. *McInerney,* 373 Mass. 136, 141 (1977), quoting *Commonwealth* v. *Chance,* 174 Mass. 245, 252 (1899), are rendered superfluous by this requirement.

As we have recently stated, *Henson* "clarified" the nature of the intent required for the offense of assault with intent to murder. *Commonwealth* v. *Burkett,* 396 Mass. 509, 512 (1986). See *Commonwealth* v. *Marley,* 396 Mass. 433, 437 (1985) (case which merely clarified the meaning of a statute did not announce new legal principles and is applied retroactively). *Henson* is simply the cumulative result of the common law concerning the offense, and is fully retroactive.

Additionally, we observe that, inasmuch as *Henson* may also be viewed as an opinion interpreting the meaning of a statute, G. L. c. 265, § 18 (*b*), our conclusion concerning its retroactive application is the usual one. See *Commonwealth* v. *Horton,* 365 Mass. 164, 172 n.14 (1974) (although legislative determinations can have prospective application, "a judicial determination, as to the meaning of a statute, normally would not").

2. While the defendant, on appeal, challenges the judge's jury instruction on assault while armed with a dangerous weapon, with intent to murder, he raised no objection to the charge at trial.[7] Consequently, our review is limited to a determination whether the charge as a whole was so erroneous that it created a "substantial risk of a miscarriage of justice." *Commonwealth* v. *Pickles,* 393 Mass. 775, 776 (1985), quoting *Commonwealth* v. *Freeman,* 352 Mass. 556, 563-564 (1967). We discern no such risk.

· The defendant concedes that the judge's instructions concerning the indictments for assault while armed with a dangerous weapon, with intent to murder,[8] correctly stated that the intent required for the crime was "a specific intent to kill with malice aforethought." He argues, however, that this statement of intent, juxtaposed with the judge's instruction on malice, "hopelessly confuse[d] the jury." The judge gave the classic, three-point definition of malice as including "any unexcused intent to kill, to do grievous bodily harm, or to do an act creating a plain and strong likelihood that death or grievous harm will follow." See *Commonwealth* v. *Starling,* 382 Mass. 423, 427-428 (1981); *Commonwealth* v. *Huot, supra; Commonwealth* v. *McInerney, supra; Commonwealth* v. *Chance, supra.* The judge's instruction included an explanation of the elements of murder. See *Commonwealth* v. *Demboski,* 283 Mass. 315, 323 (1933) (if evidence shows an intent to kill under circumstances constituting murder, if death had followed, party may be convicted of assault with intent to murder. If completed offense would be manslaughter only, party may be convicted of assault with intent to kill only, or assault only). See also *Commonwealth* v. *Parenti,* 14 Mass. App. Ct. 696, 702, 703 (1982). The defendant contends that the definition of malice given, effectively contradicted the instruction concerning specific intent to kill, and led the jurors to think that they

---

[7] Neither the defendant nor the Commonwealth appears to have requested particular jury instructions at the close of the evidence.

[8] See Appendix for pertinent portions of the judge's instructions on this offense.

might find the defendant guilty of assault while armed with a dangerous weapon, with intent to murder, on a showing of "something less" than a specific intent to kill. By permitting the jury to convict on a lesser finding, of either an intent to do serious harm, or of an intent to do a reckless or wanton act, the defendant reasons that the charge "deprived [him] of the defense of lack of intent to kill."[9]

The charge did not create a substantial risk of a miscarriage of justice. The charge concerning this offense spans a full seven pages of transcript. The judge repeatedly referred to the requirement of a specific intent to kill, only once alluding to a specific intent to murder. In the portion of the instruction which discussed the crime of murder, he used the word "kill," or a derivation of the term, no fewer than twenty times. The over-all impact of the entire charge adequately communicated to the jury the necessity of finding a specific intent to kill in order to convict the defendant on the indictments. See *Commonwealth* v. *Doucette,* 391 Mass. 443, 450 (1984); *Commonwealth* v. *Sellon,* 380 Mass. 220, 231-232 (1980).

*Henson, supra* at 591, points out that malice, in the context of assault with intent to murder, simply means absence of justification, excuse, and mitigation. We have earlier discussed the fact that the state of mind necessary for conviction of this offense renders the two other parts of the traditional definition of malice superfluous. Here, the judge instructed the jury that to find the defendant guilty of assault while armed with a dangerous weapon, with the intent to murder, they must find "the assault must have been done with the specific intent to kill *with malice* aforethought" (emphasis added). Nowhere did he commit what we found in *Henson* to be the fatal flaw of saying or implying that the malice that is necessary for a conviction of murder in the second degree is the same as the malice required to find the defendant guilty of assault while

---

[9] The defendant conceded identification, that he had assaulted the officers with a gun, and that he had fired at least some of the shots attributed to him. The essence of his defense was that he committed the assaults with the purpose of frightening his pursuers and facilitating his getaway, and not with the intent to kill the officers.

armed with a dangerous weapon, with an intent to murder. *Id.* at 590. Here, the judge cautioned the jury "again, neither of these defendants [is] being charged with murder. They're being charged for armed assault with the specific intent to commit murder." The discussion of murder was clearly an attempt to explicate the broad concept of malice so that the jury might better understand the legal concepts to be applied. The judge did instruct that malice includes "any unexcused intent to kill." If he had said nothing more concerning malice there would be no doubt that the charge would have comported with the requirements of *Henson.* However, at this point in the charge he added to his explanation of malice the concepts appropriate to malice in the context of a murder charge, "[or] to do grievous bodily harm, or to do an act creating a plain and strong likelihood that death or grievous harm will follow." That this latter, superfluous statement would have been better left unsaid is manifest. Nevertheless, the extraneous explanation of malice does not destroy the efficacy of an otherwise accurate charge. The judge went on to state that "[w]hen a killing is shown to have been committed *without justification and as a result of a deliberate act* on the part of a defendant, then it is proved sufficiently to have been done with malice aforethought" (emphasis added). This reemphasized the proper and relevant definition of malice and underscored the importance of the element of intent to kill. The unchallenged portions of the charge were excellent and meticulous. See *Commonwealth* v. *Ennis,* 20 Mass. App. Ct. 263, 269 (1985). Compare *Commonwealth* v. *Doucette, supra* at 451-452. We perceive no reversible error.

*Judgments of the Superior Court affirmed.*

APPENDIX.

The relevant portions of the judge's instruction on assault while armed with a dangerous weapon, with intent to murder, were as follows: "Chapter 265, Section 18 requires three elements which you must find to be present beyond a reasonable doubt in order to return a verdict of guilty. Number 1), that the defendant was armed with a dangerous weapon. . . . Second

element: There must be an assault. . . . Third element: The assault must have been done with the *specific intent to kill* with malice aforethought. Three: the assault must have been done with the *specific intent to kill . . . .*" (Emphasis added.)

The judge then defined "armed with a dangerous weapon" and assault. He continued as follows:

"Now, the third element of the offense of armed assault with intent to murder, which you must also find beyond a reasonable doubt, is that at the time of the armed assault, . . . the defendant had the *specific intent to kill* with malice aforethought.

"Now, both *specific intent* and murder require further definition. Intent means what a person's objective or purpose is. This is to be determined by you, the jury, from all the evidence and the circumstances developed or disclosed at trial. It is a matter of fact which may or may not be susceptible to proof by direct evidence. If it is not subject to proof by such direct evidence, resort may be taken by you, the finders of fact, to reasonable inferences drawn from all the facts that you may find.

"On these indictments for armed assault with intent to murder, *there must be a specific intent,* as opposed to a general intent. A general intent is when we do things more or less unconsciously. It's a reflex action. Sitting down in a chair, walking upstairs, those are actions which are done with a general intent. We would not do them unless our mind resolved to do them, but they do not require any concentration or focussing of the mind. A *specific intent, which is required here,* is the act of concentrating or focussing the mind for some perceptible period. It is a conscious act with the determination of the mind to do an act. It is contemplation rather than reflex and it must precede the act.

"Now I must define murder for you to determine whether if death had followed there was a *specific intent to kill,* which would constitute murder. Now, again, neither of these defendants are being charged with murder. They're being charged for armed assault with the specific intent to commit murder. So, in order to define murder to you I'm going to define it as it would be defined to you, *to find out whether or not the Commonwealth has proved the specific intent element to commit murder,* I'm going to define it as if someone had, in fact, died. Now, as I defined assault to you you know there doesn't even have to be a touching of the person, but, again, there is no burden on the Commonwealth to prove beyond a reasonable doubt for armed assault with intent to murder that a death or murder, in fact, occurred.

"Murder under the law of this Commonwealth is defined as the unlawful killing of a human being with malice aforethought. We have all heard the word homicide and, unfortunately, the way we use it in every-day life we are not giving it its correct technical meaning because homicide, as the law defines it, is simply the killing of one human being by another and there is such a thing as a lawful homicide.

"A soldier who kills in war commits homicide, and, yet, what he has done is absolutely lawful. So remember, the word homicide means only the killing of one human being by another human being and there may not be anything legally reprehensible in committing a homicide at all. Some homicides are lawful, but if a killing is unlawful or criminal, then that homicide may become murder. So, remember, a homicide may become murder only if the killing is unlawful, that is, it is done without legal justification or excuse.

"Now, if a killing is accompanied by malice aforethought, then that criminal or unlawful killing is murder. But if there is no malice involved, then the unlawful killing is not murder. To make a determination as to whether an unlawful killing would be murder, we must look at all the circumstances which precede or attend the killing. You would have to look at the act of the killer to determine the presence or absence of malice.

"Malice includes any unexcused intent to kill, to do grievous bodily harm, or to do an act creating a plain and strong likelihood that death or grievous harm will follow. Malice here is used in a technical sense. Malice includes not only those motives which may spring from anger, hatred, or revenge in a killer, but from any other unlawful or unjustifiable motive that such a person may harbor.

"When a killing is shown to have been committed without justification and as a result of a deliberate act on the part of a defendant, then it is proved sufficiently to have been done with malice aforethought. But whether a killing is actually committed with malice aforethought is determined from the nature and the quality of the act which attends the killing, because that is the only way to decide what reveals the state of the heart and the mind of the person who does the killing.

"If circumstances attending a killing disclose that death follows from a purposeful, selfish, wrongful motive as distinguished from the frailty of human nature, then there is malice aforethought. The evidence must tie the weapon to the defendant. It must place him at the scene of the crime, and it must establish that the use of the weapon was intentional, and that the intent was formed before the act. So, remember, malice aforethought is an essential ingredient of the crime of murder." (Emphasis added.)

O'CONNOR, J. (dissenting). I agree that assault while armed with a dangerous weapon, with intent to murder, requires an intent to kill. G. L. c. 265, § 18 (*b*) (1984 ed.). *Commonwealth v. Henson,* 394 Mass. 584, 590-592 (1985). I do not agree, however, that the charge adequately communicated to the jury the necessity of finding a specific intent to kill in order to convict the defendant on the indictments, nor do I agree that

the charge did not create a substantial risk of a miscarriage of justice. I agree with the Appeals Court that the jury instructions contained error requiring reversal.

Before stating the reasons for my position on that question, I briefly digress to discuss another matter which is important enough to warrant special attention. In part one of its opinion, the court engages in an analysis of the retroactivity of *Commonwealth* v. *Henson, supra.* The court's approach, required by its unwarranted assumption that *Henson* is "a pronouncement of decisional law," *ante* at 173, is patterned after our analysis of the retroactivity of decisional law in *Commonwealth* v. *Breese,* 389 Mass. 540, 541 (1983). In *Breese,* we said that if a judicially created principle of law is "new," that is, if it represents "a clear break with the past," and if it meets certain other criteria, it will apply prospectively only. *Id.* at 541-542, quoting *Desist* v. *United States,* 394 U.S. 244, 248 (1969). But we recognized in *Commonwealth* v. *Marley,* 396 Mass. 433, 437 (1985), that that type of analysis is inappropriate when the question, as here, is whether retroactive application is to be given to a statute. Whenever a court interprets a statute, the court does not announce a new principle of law but only defines or clarifies the law previously enacted by the Legislature. See *Commonwealth* v. *Burkett,* 396 Mass. 509, 512 (1986); *Commonwealth* v. *Marley, supra* at 437. Therefore, our decision in *Commonwealth* v. *Henson, supra,* interpreting G. L. c. 265, § 18, is necessarily retroactive to the date that statute became effective. To engage in a *Breese* type inquiry in this case is not only unnecessary, therefore, but unnecessarily creates confusion.

Turning to the question whether the jury instructions contained reversible error, in my view it cannot reasonably be said that, in a case like this, where the defendant is accused of shooting at pursuing police officers, there was no substantial risk of a miscarriage of justice even though the jury might fairly have understood from the judge's instructions that they could convict the defendant without finding that he intended to kill one or more of the officers. In other words, it cannot fairly be said that, if the jury reasonably understood they could

convict the defendant on a finding that he intended to inflict nonfatal wounds or merely to scare his pursuers off, there nevertheless was no substantial risk of a miscarriage of justice. The court does not appear to disagree with that assessment, but concludes that, viewed in their entirety, the instructions were adequate.

In my opinion, the jury instructions, viewed as a whole, did not adequately communicate to the jury the necessity of their finding a specific intent to kill in order to convict the defendant. It is true, as the court observes, that in his instructions the judge repeatedly referred to the requirement of a specific intent to kill. But, on each such occasion, he spoke not merely of a specific intent to kill, but of a "specific intent to kill with malice aforethought." He made malice aforethought a part of the formula, and defined it in the context of murder. "Malice," he said, "includes any unexcused intent to kill, to do grievous bodily harm, or to do an act creating a plain and strong likelihood that death or grievous harm will follow." The court characterizes that instruction on malice as "extraneous" and "superfluous," but it is highly unlikely that the jury considered the judge's lengthy description of malice as extraneous and superfluous. It is far more likely that they gave meaning to the malice instructions by construing them to mean that the mental state required for assault by means of a dangerous weapon, with intent to murder, is the same as the mental state required for murder, namely an intent to kill, or to do grievous bodily harm, or to do an act creating a plain and strong likelihood of grievous bodily harm or death. Surely, there is a substantial risk that the jury understood the judge to be saying that the only difference between murder and assault with intent to murder is that the former requires that the victim has died, and the latter does not.

Nothing was said to correct the jury's probable misunderstanding of the law. The judge's statement, relied on by the court as corrective, that "[w]hen a killing is shown to have been committed without justification and as a result of a deliberate act on the part of a defendant, then it is proved sufficiently to have been done with malice aforethought," simply is not

corrective. However correct that instruction might be with respect to murder, it is not correct with respect to assault with intent to murder. It would have been consistent with that instruction for the jury to have convicted the defendant on the ground that he deliberately shot at the police officers without intending to kill any of them, but intending only to injure them or scare them off. Thus, the instructions were erroneous, and they created a substantial risk of a miscarriage of justice. I would reverse the convictions.