COMMONWEALTH vs. MICHAEL P. PARENTI.

Middlesex.  September 13, 1982. — November 24, 1982.

Present: GREANEY, CUTTER, & PERRETTA, JJ.

*Homicide.  Assault with Intent to Kill.  Wanton or Reckless Conduct.
Practice, Criminal,* Instructions to jury, Argument by prosecutor.

At the trial of an indictment charging armed assault with intent to mur-
    der, the judge's instructions to the jury defining the offense of assault
    with intent to kill presented a logical impossibility, and required
    reversal of the defendant's conviction of the latter offense, where, on
    the only theory of manslaughter presented to the jury, any killing that
    occurred would have been involuntary manslaughter which, by defi-
    nition, is unintended. [699]
A conviction of assault with intent to kill could not be supported on jury
    instructions referring to the crime of manslaughter as being committed
    by wanton or reckless conduct. [699-703]
The offense of assault by means of a dangerous weapon is not a lesser-
    included offense under the crime of assault with intent to kill.
    [703-704]
In the circumstances a defendant, whose conviction of assault with intent
    to kill was reversed on appeal, properly might be retried on a new in-
    dictment charging assault by means of a dangerous weapon. [703-704]
A prosecutor's statement in closing argument that, had a pursuing officer
    attempted to leave his cruiser and approach the automobile he was
    following, "we wouldn't just be trying an armed assault with intent to
    murder today, but a much more serious case," was not improper, but
    was a reasonable response to defense counsel's suggestion that the offi-
    cer made no initial attempt to stop the automobile because he was
    uncertain whether its occupants were bank robbers. [704-705]

INDICTMENTS found and returned in the Superior Court
Department on May 14, 1979.

The cases were tried before *Morse,* J.

*Ellen A. Howard* for the defendant.

*Kevin J. Ross,* Legal Assistant to the District Attorney, for
the Commonwealth.

GREANEY, J.  On December 21, 1979, a Superior Court jury convicted Parenti of armed robbery and unlawfully carrying a firearm.  On December 24, 1979, it convicted him of assault with intent to kill.  See G. L. c. 265, § 29; *Commonwealth* v. *Demboski*, 283 Mass. 315 (1933).  The latter conviction was returned on an indictment charging Parenti, under G. L. c. 265, § 18, with armed assault with intent to commit murder.  Concurrent sentences of imprisonment to the Massachusetts Correctional Institution at Walpole were imposed on the armed robbery and firearms convictions; a consecutive sentence of six to ten years was imposed on the assault conviction.  On appeal, Parenti argues that the judge's instructions to the jury on the offense of assault with intent to kill were framed in terms of assault with intent to commit involuntary manslaughter, a nonexistent crime.  He also contends that his right to a fair trial was prejudiced by certain remarks in the prosecutor's closing argument and by an encounter with two jurors who observed him leaving the courthouse in handcuffs.  We reverse the conviction of assault with intent to kill and affirm the convictions on the armed robbery and firearms charges.

The East Arlington branch of the Suburban National Bank was robbed on May 3, 1979, by two masked men carrying pistols.  The jury could have found that Parenti and an accomplice were the robbers and that they fled the scene in a blue automobile driven by the accomplice.  Officer Thomas Calautti of the Arlington police arrived at the bank in a marked police cruiser just as the blue car pulled away.  He immediately gave chase.  At a point more than a mile from the bank, Parenti leaned his upper body out of the passenger window and fired three shots in the direction of the pursuing police cruiser.  When the shots were fired, the cruiser was approximately 100 to 200 feet behind the blue car. The vehicles were then traveling at a speed between forty and fifty miles per hour.  None of the shots hit the cruiser.  Parenti was captured by other police officers after he jumped from the moving vehicle.

Before closing arguments, the prosecutor, Parenti's trial counsel, and the judge discussed jury instructions on the charge of armed assault with intent to murder. Both counsel concurred in the judge's view that the jury should also be instructed on assault with intent to kill, which was perceived as a lesser-included offense within the charge of armed assault with intent to murder.[1] In his main charge, the judge stated that assault with intent to kill "describes in essence the crime of manslaughter as opposed to murder." He then went on to define manslaughter as "the intentional doing of a wanton or reckless act absent an intent to kill, but the act or acts are so dangerous, reckless and wanton that they are likely to cause death or grave bodily harm." Parenti's counsel made no objection to these instructions. The jury subsequently returned guilty verdicts on the armed robbery and firearms charges. After additional deliberations on the assault indictment, however, the jury made a request for a "definition on 'armed assault with intent to kill.'" In response to the request, the judge further instructed the jury that "we are talking about the doing of an intentional act which if completed would be manslaughter and not murder. Manslaughter is an unintentional killing which results from the doing of a wanton or reckless act that is likely to cause death or serious bodily injury." Parenti's counsel did not object to the supplementary instruction, requesting instead that the instruction be expanded to permit

---

[1] The fact that Parenti was leaning out of the window of a speeding automobile when he fired the shots could have explained his poor marksmanship and would have permitted the jury to find that he intended to hit the cruiser and kill the officer. If the jury accepted this hypothesis, they would have been warranted in finding the defendant guilty of armed assault with intent to murder. On the other hand, the jury could have found, based upon the distance between the vehicles when the shots were fired, the size of the cruiser, and the number of shots fired to no effect, that Parenti may have been making a conscious effort not to hit the officer. If so, the mental element necessary to convict him of armed assault with intent to commit murder would have been negated. As will be explained later in this opinion, however, assault with intent to kill was not a lesser-included offense on the indictment under G. L. c. 265, § 18.

the jury to consider the "lesser-included offense of simple assault." The judge refused the request.

1. The Supreme Judicial Court has held that "an attempt to commit involuntary manslaughter is logically impossible" because an attempt necessarily involves intent and "[i]nvoluntary manslaughter is homicide unintentionally caused." *Commonwealth* v. *Hebert,* 373 Mass. 535, 537 (1977), and cases cited. Since intent is an express element of the crime of assault with intent to kill, the quoted language from the *Hebert* decision requires the conclusion that assault with intent to kill as defined in the jury instructions in the instant case is also a logical impossibility because the killing in that crime, if accomplished, would have been involuntary manslaughter, which by definition is unintended. Several other jurisdictions which have considered the question have reached the same conclusion, see *People* v. *Otis,* 111 Cal. App. 3d 467, 473 (1980); *Fortner* v. *State,* 119 Fla. 150, 155-156 (Brown, J., concurring) (1935); *Thetge* v. *State,* 83 Ind. 126, 128 (1882); *State* v. *Smith,* 228 Or. 340, 350-352 (1961); *Shorter* v. *State,* 147 Tenn. 355, 360 (1922); *State* v. *Parmely,* 65 Wyo. 215, 230-232 (1948), as have text-writers. See 2 Torcia, Wharton's Criminal Law § 199, at 327 (14th ed. 1979); 40 C.J.S., Homicide § 85 (1944).

2. In dicta, the *Hebert* court also reconfirmed the cases in which assault with intent to kill was treated as assault with intent to commit manslaughter and recognized the identity between this crime and "attempted voluntary manslaughter." The court concluded that "the crime is more likely to be understood by a jury if it is referred to as 'assault with intent to kill' rather than as 'assault with intent to commit manslaughter,'" *Hebert, supra* at 538, in part because "[m]anslaughter may comprehend a variety of cases where intent to kill is not essential," including "cases of wanton or reckless conduct." *Id.* at 538-539. It is clear that the *Hebert* court comprehended assault with intent to kill as encompassing only those assaults which carry the legal potential for conviction of voluntary manslaughter if death ensues. Since the judge's instructions referred to the

crime of "manslaughter," committed by wanton or reckless conduct, we must inquire whether that theory will support a conviction for assault with intent to kill on a voluntary manslaughter theory in view of the language in *Hebert*. We conclude it should not.

The degree of danger accompanying an act causing an unintended death may, when judged in light of common experience, result in the actor's being held liable for murder. See, e.g., *Commonwealth* v. *Pierce*, 138 Mass. 165, 178 (1884); *Commonwealth* v. *Chance*, 174 Mass. 245, 252 (1899); *Commonwealth* v. *Madeiros*, 255 Mass. 304, 309, 315 (1926); *Commonwealth* v. *Gricus*, 317 Mass. 403, 410 (1944); *Commonwealth* v. *Huot*, 380 Mass. 403, 408 (1980); *Commonwealth* v. *Swift*, 382 Mass. 78, 83 (1980). It may also result in a conviction of manslaughter. See, e.g., *Commonwealth* v. *Pierce, supra* at 178; *Commonwealth* v. *Welansky*, 316 Mass. 383, 399 (1944); *Commonwealth* v. *Godin*, 374 Mass. 120, 128-130 (1977), cert. denied, 436 U.S. 917 (1978); *Commonwealth* v. *Gallison*, 383 Mass. 659, 665 (1981); *Commonwealth* v. *Marcelli, ante* 567, 568-569 (1982). As Justice Holmes put it in the *Pierce* decision (at 178): "[I]t is familiar law that an act causing death may be murder, manslaughter, or misadventure, according to the degree of danger attending it." In *Commonwealth* v. *Chance*, 174 Mass. 245 (1899), the element of malice in the crime of murder was defined (at 252) in these terms: "[M]alice in murder means knowledge of such circumstances that according to common experience there is a plain and strong likelihood that death will follow the contemplated act. . . ." The *Chance* formulation of malice, or one substantially like it, has been applied in a legion of homicide cases since 1899, the *Huot* and *Swift* cases cited above being two recent examples.[2] In *Commonwealth* v. *Welan-*

---

[2] The *Huot* court explained that the element of "[m]alice aforethought [in murder] includes an unexcused intent to kill, to do grievous bodily harm, or to do an act creating a plain and strong likelihood that death or grievous bodily harm will follow." 380 Mass. at 408. The *Swift* decision quoted verbatim the *Chance* definition of malice in applying the es-

*sky,* 316 Mass. 383 (1944), the crime of involuntary manslaughter by wanton or reckless conduct was defined (at 399) as follows: "The essence of wanton or reckless conduct is intentional conduct, by way either of commission or omission where there is a duty to act, which conduct involves a high degree of likelihood that substantial harm will result to another." Voluntary manslaughter, on the other hand, has traditionally been viewed in this State as comprehending cases in which a killing was committed under mitigating circumstances such as "a sudden transport of passion or heat of blood, upon a reasonable provocation and without malice, or upon a sudden combat." *Commonwealth* v. *Campbell,* 352 Mass. 387, 397 (1967) (quoting from *Commonwealth* v. *Bouvier,* 316 Mass. 489, 494 [1944]), and cases cited.

It would be theoretically possible to formulate a category of manslaughter based upon wanton or reckless conduct which poses a higher degree of risk than the risk of involuntary manslaughter described in *Welansky,* and add the resulting offense to those already treated as voluntary manslaughter. The line between the two offenses could most logically be drawn at the point where the defendant's conduct creates a probability of death as distinguished from the "high degree of likelihood [of] substantial harm" described in *Welansky, supra* at 399. To express voluntary manslaughter, however, in terms of more aggravated conduct than that considered in the *Welansky* case would be so closely approximate the definition of malice required to convict of murder that the distinction between manslaughter and murder in cases of wanton or reckless conduct for all practical purposes would be obliterated. Unnecessary dupli-

tablished Massachusetts rule that the fact finder can infer malice from the circumstances of the crime. 382 Mass. at 83. See also *Commonwealth* v. *Starling,* 382 Mass. 423, 427-429 (1981), where a challenge directed at the soundness of the traditional definition of malice was rejected, and an instruction which mirrored the language in *Chance,* as discussed in *Commonwealth* v. *Madeiros,* 255 Mass. at 309-310, 315, was upheld.

cation and confusion among serious offenses would be the
result. While "drastic simplification is doubtless desirable,"
see *Commonwealth* v. *Starling,* 382 Mass. 423, 428 (1981),
any substantial alteration in principles embedded in our
statutes and common law and which differentiate our
"[t]wo distinct forms of manslaughter," see *Common-
wealth* v. *Jones,* 382 Mass. 387, 389-390 & n.3 (1981), from
each other, and from the crime of murder, should be left to
legislative revision of the offenses. See, e.g., Model Penal
Code §§ 210.0-210.3, 211.0-211.2, & comments (1962);
Proposed Criminal Code of Massachusetts c. 265, §§ 2, 3,
6-8, & Revision Commission Notes (1972). We conclude
that the language in the *Hebert* decision which describes
manslaughter as the substantive basis of the crime of assault
with intent to kill must be read as referring only to certain
forms of voluntary manslaughter.

This conclusion is consistent with *Commonwealth* v.
*Demboski,* 283 Mass. 315, 323 (1933), as that case is con-
strued in *Hebert.* No question was raised in *Demboski* as to
the sufficiency of the facts to prove assault with intent to
kill. The court in *Demboski* decided only "that a defendant
indicted for assault with intent to murder under G. L.
c. 265, § 15, could be convicted of the lesser-included crime
of assault with intent to kill under G. L. c. 265, § 29," and
"treated the latter crime as assault with intent to commit
manslaughter." *Hebert,* 373 Mass. at 538. The Common-
wealth's reading of *Demboski* as approving a defendant's
conviction of assault with intent to kill for engaging in wan-
ton or reckless conduct reflects a failure to recognize the
narrow holding in that case. The only other reported deci-
sion we have found in which the offense of assault with in-
tent to kill was discussed in any detail[3] is *Commonwealth* v.
*Reynolds,* 120 Mass. 190 (1876). To the extent that the Rey-
nolds case may be construed as permitting a conviction of
assault with intent to kill upon facts which would support

---

[3] In *Commonwealth* v. *Jervis,* 368 Mass. 638, 639 (1975), the holding in
*Demboski* was applied without discussion.

only involuntary manslaughter had death resulted, it must be considered to have been limited by the *Hebert* decision.

3. Although Parenti made no objection to the judge's charge, he is entitled to relief since he was convicted on instructions of law which defined a logically impossible form of assault with intent to kill.[4] See *Commonwealth v. Freeman*, 352 Mass. 556, 563-564 (1967). No other theory of manslaughter was presented to the jury, nor could it have been on the facts of this case. We see no merit in the Commonwealth's remaining argument in support of the verdict.[5]

Neither are we persuaded by the Commonwealth's argument that judgment should be entered on the lesser-included offense of assault with a dangerous weapon. G. L. c. 265, § 15B. That offense is a lesser-included offense of armed assault with intent to murder, G. L. c. 265, § 18, the crime charged in the indictment, since conviction under § 18 requires a finding that the assault occurred by means of a dangerous weapon. The defendant, however, was convicted under G. L. c. 265, § 29, not under § 18. "In determining whether, on the basis of a single act, a defendant may be prosecuted and punished for two statutory or com-

---

[4] We note in passing that in defining manslaughter by reckless or wanton conduct, the judge strayed from the language of *Welansky, supra,* which speaks in terms of conduct involving "a high degree of likelihood that substantial harm will result." 316 Mass. at 399. The judge's charge referred to "acts . . . so dangerous, reckless and wanton that they are likely to cause death or grave bodily harm." This arguably sets a higher standard of danger than required by *Welansky* and comes close to duplicating the language of *Commonwealth v. Chance, supra,* describing malice.

[5] The Commonwealth theorizes that if the officer had been killed the resulting homicide would have been felony-murder. The Commonwealth concludes from that assumption that the unsuccessful assault was an assault with intent to commit felony-murder, that the defendant was not entitled to any instruction on assault with intent to kill, and that the defendant, as a result, could only have benefited from the instruction he received. . The contention is difficult to follow but appears to invite recognition of the crime of assault with intent to commit felony-murder under G. L. c. 265, § 18. We reject any such formulation as beyond the statute's intent.

mon law crimes, the long-prevailing test in this Commonwealth is whether each crime requires proof of an additional fact that the other does not. . . . If so, neither crime is a lesser-included offense of the other . . . ." *Commonwealth v. Jones,* 382 Mass. at 393. Successful prosecution under G. L. c. 265, § 29, for an assault with intent to kill does not require proof that the defendant was armed with a dangerous weapon as is required for conviction under c. 265, § 15B. Since all the elements of a lesser-included offense must by definition be present in the greater offense, it follows that G. L. c. 265, § 15B, which contains an element distinct in law from those which constitute a crime under G. L. c. 265, § 29, is not included in the latter offense.[6] The Commonwealth, however, may seek to retry Parenti on a new indictment under G. L. c. 265, § 15B. Cf. *Salemme v. Commonwealth,* 370 Mass. 421, 424 (1976).

4. The issue of Parenti's accidental encounter and exchange of words with two jurors while handcuffed, occurring after the jury had returned its verdicts on the robbery and firearms charges, need not be considered in view of our conclusion that the conviction on the assault indictment then remaining before the jury must be reversed. Objection was also made to a suggestion in the prosecutor's closing argument that had Officer Calautti attempted to leave his cruiser and approach the automobile he was following at a stoplight, "we wouldn't just be trying an armed assault with

---

[6] It is of no significance that counsel and the judge below consistently referred to the § 29 offense as "armed assault with intent to kill," and that the defendant's conviction was so recorded on the docket. It appears indisputable that whatever crime was committed here was committed with a dangerous weapon. It is just as clear, however, that one need not have been so armed to be convicted, as the defendant was, under G. L. c. 265, § 29. "For offenses to be identical they must be the same in law and in fact. If the offenses are distinct in law, it is of no consequence how nearly they may be connected in fact." *Commonwealth* v. *Hogan,* 7 Mass. App. Ct. 236, 247, *S.C.,* 379 Mass. 190 (1979). See also *Kuklis* v. *Commonwealth,* 361 Mass. 302, 307 (1972). Similarly, if one crime is to be a lesser-included offense of another, all of its elements must be identical in law with the elements of the greater offense.

intent to murder today, but a much more serious case."
Parenti contends that this argument went beyond any per-
missible inferences from the evidence, see *Commonwealth
v. Hawley*, 380 Mass. 70, 85 (1980), and served only as an
irrelevant and emotional appeal to the jury, tending to dis-
rupt their dispassionate consideration of the evidence. He
urges that the robbery and firearms convictions be reversed
because of it. Our review of the remark (in complete con-
text) shows it to have been a reasonable and proper attempt
to counter the suggestion in defense counsel's summation
that Officer Calautti made no initial attempt to stop the au-
tomobile because he was uncertain whether its occupants
were the bank robbers. See *Commonwealth* v. *Hoffer*, 375
Mass. 369, 378 (1978); *Commonwealth* v. *Dias, ante* 560,
565 (1982).

The judgments on indictments No. 79-1362 and No. 79-
1366 are affirmed. The judgment on indictment No. 79-
1364 is reversed and the verdict is set aside. On that indict-
ment, judgment is to be entered for the defendant.

*So ordered.*