COMMONWEALTH *vs.* OSCAR A. ALFONSO.

Middlesex. March 4, 1985. — April 5, 1985.

Present: GREANEY, C.J., GRANT, & WARNER, JJ.

*Assault with Intent to Kill. Self-Defense. Practice, Criminal*, Instructions to jury, Sentence. *Evidence*, Other offense.

At the trial of indictments charging assault with intent to murder two State police officers who had come to the defendant's house to execute a search warrant for drugs, the judge's instructions to the jury on the use of excessive force in self-defense was warranted by the evidence, and the jury, acting on his instructions, could properly find the defendant guilty of the lesser-included offense of assault with intent to kill. [602-605]

At the trial of indictments, a judge's omission to charge the jury specifically that the burden was on the Commonwealth to prove beyond a reasonable doubt that the defendant had acted with excessive force in self-defense presented no substantial risk of a miscarriage of justice, where he had correctly stated the standard of proof several times in the course of his lengthy charge, and had also stated it in his supplementary instruction on the issue of excessive force. [603-605]

A judge's use of the expression "[i]f you find," in referring to a criminal defendant's right under G. L. c. 278, § 8A, to defend himself within his dwelling, presented no substantial risk of a miscarriage of justice, where the charge as a whole adequately stated the Commonwealth's burden of proof and where, in any event, the defendant was not entitled to an instruction based on that statute. [606-607]

At the trial of indictments for assault and battery by means of a dangerous weapon and for assault with intent to commit murder, arising out of a defendant's attack on State police officers who had come to his house to execute a search warrant for drugs, there was no error in the admission, with appropriate limiting instructions, of testimony concerning the substantial quantity and the value of drugs ultimately seized at the house, as tending to show that the defendant had a motive other than self-defense for committing the crimes charged. [607-609]

The record of the sentencing proceeding in a criminal case showed that the judge had taken proper factors into account in sentencing the defendant for assault and battery by means of a dangerous weapon and assault with intent to kill, and gave no support to the defendant's contention that he had been improperly resentenced for drug and firearm charges arising from the same incident. [609-611]

Separate concurrent sentences were properly imposed on a defendant convicted of the crimes of assault and battery by means of a dangerous weapon and assault with intent to kill, arising from the same incident and committed upon the same police officer. [611]

INDICTMENTS found and returned in the Superior Court Department on November 24, 1981.

The cases were tried before *Robert A. Barton,* J.

*Jeffrey M. Smith* for the defendant.

*Patricia A. McEvoy,* Assistant District Attorney, for the Commonwealth.

GREANEY, C.J. Following a jury trial in the Superior Court, the defendant was convicted of assault and battery by means of a dangerous weapon and two counts of assault with intent to kill. The latter convictions were returned on indictments which charged the defendant with assault with intent to commit murder. The charges arose out of an incident involving the defendant's shooting at two State police officers who had come to his home to execute a search warrant for drugs. On appeal, the defendant claims (1) that as a result of incorrect jury instructions he was convicted of assault with intent to commit *involuntary* manslaughter, a logically impossible crime; (2) that the jury instructions improperly shifted to him the burden of proof on the issue of the use of excessive force in self-defense; (3) that the judge erred in admitting evidence of the amount and value of the drugs seized in his home; (4) that he was improperly sentenced for assault with intent to commit murder after having been acquitted of that crime and that he was resentenced for drug offenses; and (5) that he was given multiple sentences for substantially the same offenses. We affirm.

In broad outline, the Commonwealth's case permitted the jury to find the following facts. On the morning of November 5, 1981, Troopers John O'Connor and Albert Manzi of the Massachusetts State police, accompanied by local police officers and Federal drug enforcement agents, commenced surveillance of the defendant's home in Wilmington while a warrant was sought to search the home for drugs. After obtaining the warrant later that morning, the two troopers (who were both

wearing work clothes) attempted to gain entry to the home by passing themselves off to the defendant as water meter readers. The defendant conversed with the troopers from a second floor window about their need to read his water meter but steadfastly refused to let them in. Not gaining access to the home, the troopers decided to abandon the ruse and to execute the warrant by force. Within moments of that decision, the defendant appeared with a handgun in each hand at the second floor window from which he had been conversing with the troopers.

After identifying themselves as State police, the troopers proceeded to use force to execute the warrant. Trooper Manzi first kicked open the front door. Upon entering the home, he immediately spotted the defendant standing at the top of a flight of stairs with a handgun in each hand. The defendant fired one or two shots at Manzi. One bullet just missed the officer, lodging in a door jamb two inches from him. Manzi ducked for cover and fired two shots up the stairs as Trooper O'Connor came through the front door. O'Connor also saw the defendant looking down at him from the top of the stairs with a handgun in each hand. O'Connor ducked and raised an arm to cover his face. The defendant fired another shot, hitting O'Connor in the elbow of his raised arm. Manzi then fired two more shots and ran upstairs after the defendant, who had retreated to his bedroom. Manzi found and arrested the defendant as he knelt on the floor of his bedroom with the handguns beside him. Execution of search warrants led to the seizure of four pounds of cocaine and other controlled substances.[1]

The defense presented a different version of the facts. The defendant testified that he always slept with three loaded handguns in his bedroom because a previous home of his had been forcibly entered by armed intruders. He also testified that he was attempting to place a telephone call to the Wilmington water department to ascertain whether the men at his front door were in fact meter readers when he heard the door being kicked in. At that time, the defendant grabbed a single handgun

---

[1] Trooper Manzi testified that the cocaine seized in the search was of exceedingly high quality and had a street value of $750,000.

and went to the top of the stairs. There he saw two men with "large guns" in their hands. The defendant stated that he jumped back while shots were fired by the men at a mirror at the top of the stairs. Thinking that the men were "coming to kill him," the defendant stuck out his left hand around the corner of the upstairs hallway and fired twice. He then ran to his bedroom, grabbed a second handgun, and went to the window with the intention of jumping out. Upon reaching the window, the defendant was shot at again from outside the house. At this point, he heard someone shout for the first time, "State police." The defendant promptly threw his handguns to the floor and knelt down. Moments later, Trooper Manzi came into the room and placed him under arrest.[2]

1. The judge gave comprehensive and accurate instructions on self-defense and on the elements of the crime of assault with intent to commit murder. The judge also decided to instruct on the lesser-included offense of assault with intent to kill. Describing the lesser offense as assault with intent to commit manslaughter, the judge gave the jury the instructions set forth in the margin.[3] The instructions in substance required the jury

---

[2] The defendant's case contained the following additional testimony. A telephone operator confirmed that, while she was providing directory assistance to the defendant to locate a telephone number, she heard gunshots in the background. She did not hear anyone shout "State police," but she did hear someone other than the defendant scream. Finally, the defendant admitted that he had possessed cocaine on the premises but disputed the value placed on the cocaine by Trooper Manzi. The defendant testified that the cocaine had a value of $100,000 and could be sold for approximately $2,000 per ounce on the street.

[3] "So remember [here the judge is completing his instructions on assault with intent to commit murder], malice aforethought is an essential ingredient of the crime of murder. It is not an ingredient of the crime of manslaughter.

"Now with respect to manslaughter. Manslaughter is an unlawful killing without malice aforethought. A fact or circumstance which mitigates or reduces murder to manslaughter is when a person kills using excessive force in self-defense. A person is entitled to defend himself or herself against a threat to their own life, but if they use excessive force, that is, more force than is reasonable and proper under the circumstances to avert the threat, and the use of such excessive force results in the death of their assailant, then that would constitute manslaughter, so far as the law is concerned.

"Now, in summary on this indictment: If upon the evidence, and upon those reasonable inferences you may draw from the credible evidence, you

to find that the defendant had used excessive force in the exercise of self-defense before they could convict him of assault with intent to commit manslaughter. The jury's verdict indicates their acceptance of this theory, at least in broad principle.

The defendant, represented by new counsel on appeal, refers us to the language in *Commonwealth* v. *Hebert*, 373 Mass. 535, 538-539 (1977) (hereinafter *Hebert*), which states that "[m]anslaughter may comprehend a variety of cases where intent to kill is not essential: [i.e. . . . cases where unreasonable force is used in self-defense." He argues that a homicide caused by the use of excessive force in self-defense is lacking in an intent to kill and thus invariably falls into the category of involuntary manslaughter. Because the crime of assault with intent to commit involuntary manslaughter is logically impossible, see *Hebert* at 537; *Commonwealth* v. *Parenti*, 14 Mass. App. Ct. 696, 699 (1982), the defendant rounds out his argument by concluding that, on the judge's instructions, he was convicted of a noncrime.[4]

---

find beyond a reasonable doubt that this defendant, not acting in self-defense as I have defined self-defense, being armed with a dangerous weapon, did assault the alleged victims, and that at the time of the assault the defendant had the specific intent to kill with malice aforethought, then you may return a verdict of guilty of armed assault with intent to murder to that particular indictment.

"However, if you are convinced beyond a reasonable doubt that this defendant, not acting in self-defense as I have defined self-defense, did assault the alleged victim[s] with the specific intent to kill, but are not convinced beyond a reasonable doubt that he had the specific intent to kill with malice aforethought, then you may return a verdict of guilty to the lesser offense of assault with intent to commit manslaughter.

"If the Commonwealth has failed to prove beyond a reasonable doubt that the defendant was not acting in self-defense, or that the Commonwealth failed to prove beyond a reasonable doubt that this defendant assaulted the alleged victim[s] with a specific intent to kill, your verdict on each of those two indictments must be not guilty. It is your duty to return a verdict of guilty of the highest crime, if any, proved beyond a reasonable doubt against the defendant."

[4] To complete the procedural events we note the following additional facts. The instructions on assault with intent to commit murder and assault with intent to commit manslaughter were repeated to the jury in answer to their question, posed during deliberations, which asked the judge to "[p]lease define assault with intent to commit manslaughter in contrast to assault with

We think the defendant has read the general statement of law in *Hebert* quoted above too narrowly, at least in the context of the evidence in this case. The determinative factor for jury analysis was the defendant's state of mind at the time of the shooting. If he had acted with malice — in the traditional sense necessary to convict of murder, see *Commonwealth* v. *Chance,* 174 Mass. 245, 252 (1899); *Commonwealth* v. *Starling,* 382 Mass. 423, 427-429 (1981), he could have been found guilty of the crime charged, assault with intent to commit murder. On the other hand, if the jury concluded that the defendant had acted without malice but that he had harbored an intent to kill, conviction would have been warranted on the lesser-included offense of assault with intent to kill. Between the competing proofs presented by the prosecution and the defense there was enough room to support both theories (as well as the third option of outright acquittal had the jury found that the prosecution had not satisfactorily disproved beyond a reasonable doubt all the considerations pertinent to self-defense).[5] Singularly absent from the instructions was possibly vitiating language about any manslaughter that might have resulted from the shooting constituting involuntary as opposed to voluntary manslaughter. Instead, the whole charge was structured, as it should have been, in terms of the elements of self-defense and the defendant's state of mind at the time of the shooting. The reference in the judge's instructions to excessive force in self-defense equating with manslaughter was also

_____

intent to commit murder." The defendant's trial counsel did not object to the instructions in the main charge or to the supplementary instructions. The defendant's appellate counsel is correct, however, in pointing out that his conviction of a noncrime would require relief to correct a miscarriage of justice. See *Commonwealth* v. *Parenti, supra* at 703.

[5] The evidence supporting a finding that the defendant harbored an intent to kill consists of testimony that the defendant kept several handguns for self-protection, that he had two handguns in his hands before the troopers entered the house, that he was standing at the top of the stairs with both handguns as the troopers entered, that he fired because he was sure that the troopers were about to kill him, and that he aimed at the troopers when he fired. On this evidence, the jury could have reasonably found that the defendant intended to kill the troopers first, even if, as he claimed, he had not looked when he shot.

proper, when considered in light of the evidence. The evidence brought the case within the kind of self-defense contemplated in *Commonwealth* v. *Walden*, 380 Mass. 724, 729 (1980), which was there characterized as voluntary manslaughter (see also *Gibson* v. *Commonwealth*, 377 Mass. 539, 541-542 [1979]; *Commonwealth* v. *Spear*, 2 Mass. App. Ct. 687, 689-692 & n.6 [1974]), and distinguished the case from others, in which, as *Hebert* suggests, the use of excessive force in self-defense may constitute involuntary manslaughter.[6] This is as far as we need go on the subject at this time beyond noting that the choice between voluntary and involuntary manslaughter, in most instances, will not be susceptible to sweeping generalizations but rather will be dependent on the facts of the given case. We see nothing in *Commonwealth* v. *Parenti, supra,* to vary our conclusions,[7] or in the defendant's remaining criticism of the instructions which would render them erroneous.[8]

---

[6] An example of such involuntary manslaughter can be found in *Commonwealth* v. *A Juvenile,* 17 Mass. App. Ct. 988, 989-990 (1984), where death resulted from a sudden motion by the defendant with his knife as he turned around to fend off the victim. The knife blow punctured the victim's lung and caused death.

[7] The vice in *Parenti* consisted of jury instructions which equated manslaughter with the commission of a wanton or reckless act likely to cause death or serious bodily harm. 14 Mass. App. Ct. 696. There was no such instruction here. The statement in *Parenti* at 698 n.1, that "assault with intent to kill [is] not a lesser-included offense on the indictment under G. L. c. 265, § 18" is confined to the facts of the *Parenti* case and was not meant, as is indicated in the discussion at 702 of the opinion, to exclude assault with intent to kill as a lesser-included offense under an indictment charging assault with intent to commit murder in cases where the finding of an intent to kill is open to the jury on the evidence.

[8] There is a weak argument by the defendant that the charge was confusing because it cast the lesser offense in terms of assault with intent to commit manslaughter instead of using the preferred terminology of assault with intent to kill. See *Hebert* at 538-539. While *Hebert* does suggest that the language of assault with intent to commit manslaughter should be avoided, it does not mandate, under pain of reversal, a charge in terms of assault with intent to kill. Moreover, the judge here, unlike the judge in *Hebert*, made it clear to the jury, both in his main charge and in the supplementary instructions, that they needed to find a "specific intent to kill" before they could convict of the lesser offense. The absence of an objection by trial

2. In the course of his instructions to the jury the judge failed to state specifically that the burden was on the Commonwealth to prove beyond a reasonable doubt that the defendant had acted with excessive force in self-defense. The judge at one point also used "finding" language in his charge when explaining the legal principles governing the right of self-defense in one's own home. Said the judge: "If you find that the defendant reasonably believed that the alleged victim[s] were unlawfully in his dwelling, and that he reasonably believed himself in danger of great bodily injury or death, and that he employed reasonable means to defend himself, you must acquit him." Relying on *Commonwealth* v. *Stokes*, 374 Mass. 583, 591-592 (1978), and *Connolly* v. *Commonwealth*, 377 Mass. 527 (1979) (cases where new trials were ordered because the law of self-defense was either misstated to the jury or explained to them with undue emphasis on the making of "findings"), the defendant contends that the instructions impermissibly shifted onto his shoulders the burden of proving self-defense.

No objection was made by the defendant's trial counsel to any of the instructions on the law of self-defense. In the absence of an objection, we inquire only whether the charge as given created "a substantial risk of a miscarriage of justice." *Commonwealth* v. *Freeman*, 352 Mass. 556, 564 (1967). We conclude that there was no such risk for the following reasons.

(a) The judge explicitly stated several times in the course of the charge that the Commonwealth had the burden of proving beyond a reasonable doubt every element of the crimes charged, including the fact that the defendant had not acted in self-defense. Moreover, in his supplementary instructions, see note 4, *supra*, the judge advised the jury that to convict they had to be "convinced by the Commonwealth beyond a reasonable

counsel reflects general satisfaction with the language and substance of the instructions.

We also see nothing in the jury's request for reinstruction, see note 4, *supra*, which would support a conclusion that the charge was confusing. The jury's request for reinstruction reflects, if anything, a conscientious effort to understand and apply difficult legal concepts to the confusing and contradictory versions of the facts.

doubt . . . that the defendant . . . wasn't reasonable because he used more force than is necessary." Viewed as a whole, we think the charge was sufficiently clear for the jury to understand that the burden of proof on the excessive force issue, and on the question of self-defense, rested with the Commonwealth. See *Commonwealth* v. *Sellon*, 380 Mass. 220, 231-232 (1980); *Commonwealth* v. *Doucette*, 391 Mass. 443, 450 (1984).

(b) The judge's use of the "finding" language quoted above occurred in only one isolated portion of a forty-four page set of instructions which, considered as a whole, more than adequately described the burden of proof. That portion involved instruction of the jury on the so called "castle" law, G. L. c. 278, § 8A, inserted by St. 1981, c. 696, which eliminates, in certain circumstances, the duty to retreat on the part of someone attacked in his home. See *Commonwealth* v. *Gregory*, 17 Mass. App. Ct. 651 (1984). The defendant was not even entitled to an instruction on the application of G. L. c. 278, § 8A, since that law was enacted after these crimes had occurred. In view of the unwarranted benefit given the defendant, the isolated nature of the reference, and the clarity and correctness of the over-all charge, we see nothing in the "finding" language which would provide a basis to invalidate the convictions. See *Connolly* v. *Commonwealth*, 377 Mass. at 535; *Commonwealth* v. *Albert*, 391 Mass. 853, 859 (1984); *Commonwealth* v. *Messere*, 14 Mass. App. Ct. 1, 9 (1982).

3. The defendant brought a pretrial motion in limine to exclude any reference at trial to the drugs found at his home. In denying the motion, the judge indicated his view that the evidence was relevant to the defendant's motive or intent. At trial, the defendant objected to Trooper Manzi's testimony concerning the amount of drugs seized and their value. The evidence was admitted with the copious limiting instruction set forth in the margin.[9] The instruction was given a second time

---

[9] "Madam Foreman, ladies and gentlemen of the jury, assuming for the moment that the officer is going to testify as to certain controlled substances that were found in the areas that he, perhaps, is going to describe: If that

during the prosecutor's cross-examination of the defendant concerning the location, amount, type and value of the drugs, and was restated for a third time in the final jury instructions. The defendant argues that the evidence was not relevant, or if relevant, that its probative value was outweighed by the prejudice it would cause.

While evidence of other crimes is, of course, not admissible to prove the commission of the crimes with which a defendant is charged, see *Commonwealth* v. *Brown*, 389 Mass. 382, 384 (1983), it may be admissible to establish motive or intent. See *Commonwealth* v. *Young*, 382 Mass. 448, 462-463 (1981); *Commonwealth* v. *Bradshaw*, 385 Mass. 244, 269 (1982). We think the jury reasonably could have inferred from the evidence that a credible motive for the defendant's shooting at the troopers was his desire to protect his valuable stash of drugs. The defendant himself admitted that he kept three handguns in his bedroom, that he dealt in drugs, and that at the time of the incident he had drugs in his home with a value of at least $100,000. Without the evidence of the drug cache, the jury would not have known why the police were attempting to enter the defendant's home or what reason the defendant may have had, other than self-defense, to shoot at them. The evidence thus had a direct and substantial connection with the facts on trial. We think the evidence was relevant, properly admitted

---

evidence comes in and if you believe that evidence or any part of it, you may consider that evidence, relative to controlled substances, because this defendant is not on trial before you relative to any offense relating to controlled substances. — You may consider that evidence only for a limited purpose, that is, for the purpose of determining whether it tends to show that this defendant would have had a motive and/or an intent for the present crimes charged, that is, the present crimes for which he is on trial before you. You must not consider this evidence if, in fact, it comes in, for any other purpose.

"For example: You must not regard this evidence, if it comes in, if you choose to believe it, as showing that this defendant is a person of bad character, and you cannot regard that evidence in order to prove or to show you that he had a disposition to commit a crime. Again, you can consider that evidence, if, in fact, it comes in, about controlled substances, only as evidence of motive and/or intent for the present crimes, and not as evidence of character or a disposition to commit crime."

in the judge's discretion, and carefully circumscribed by the twice-repeated limiting instruction.[10]

4. After the jury verdicts were returned, the defendant was sentenced to terms of seven to ten years of imprisonment on each of the convictions of assault with intent to kill and five to seven years of imprisonment on the conviction of assault and battery by means of a dangerous weapon.[11] The sentences were made concurrent with one another but were ordered to be served on and after the sentences the defendant was then serving on the drug and firearm charges arising out of the same incident.[12]

In deciding upon the sentences the judge stated, "I am going to impose the sentence[s] as recommended by [the] District Attorney." The judge also relied in part on the evidence relating to the amount of drugs seized in the defendant's home. Because the prosecutor had recommended that the defendant be "punished as significantly as if [his crime] were attempted murder" and because the defendant had already been sentenced on the drug charges, see note 12, *supra*, the defendant now claims that the seven to ten year sentences on the assault with intent to kill convictions were imposed for crimes other than those of which he was convicted at the trial and were thus unlawful. See *Commonwealth* v. *Franks*, 365 Mass. 74, 81 (1974). He also challenges his concurrent sentencing on the assault with intent to kill and assault by means of a danger-

---

[10] The judge also, on his own initiative, limited the prosecutor's cross-examination of the defendant concerning his drug activity when he (the judge) thought the examination was dwelling excessively on a matter that might prove prejudicial. The judge, sua sponte, repeated the limiting instruction at this point. These commendable steps further acted to safeguard the defendant's rights by assuring that the jury would not misconstrue the limited role of the evidence.

[11] By way of reminder, the assault with intent to kill convictions concerned the separate assaults on Troopers O'Connor and Manzi. The assault and battery by means of a dangerous weapon conviction concerned the separate wounding of Trooper O'Connor.

[12] Prior to trial, the defendant entered guilty pleas to unlawful trafficking in cocaine and other drug offenses, and to the unlawful possession of firearms.

ous weapon convictions pertaining to Trooper O'Connor, as sentencing for crimes "sufficiently closely related so as to preclude punishment on both." *Commonwealth* v. *Jones*, 382 Mass. 387, 394 (1981).

Although the judge ultimately accepted the prosecutor's recommendations as to the length and on-and-after service of the sentences, there is nothing in the record which indicates that the judge also accepted the prosecutor's reasoning behind those recommendations. The judge expressly stated that he gave consideration to the Superior Court guidelines for the offenses. The sentences on the assault with intent to kill convictions fell well within those guidelines. Moreover, in pronouncing sentence the judge described the factors that had influenced his decision. These included his examination of a lengthy presentence report prepared and filed by the probation department, the defendant's previous criminal record, letters filed on the defendant's behalf, and the factual circumstances of the case. The consideration of these factors, which were listed and discussed at some length by the judge, satisfies us that he arrived at the sentences from sources independent of the prosecutor's recommendations.

Nor does the record support the notion that the defendant was effectively resentenced for the drug charges. The judge did consider the evidence that a large quantity of drugs was found in the defendant's house, but this was his prerogative under the law. A judge may properly take into account many considerations in sentencing, including the nature of the offense, the circumstances of its commission, and the defendant's prior convictions. See *Commonwealth* v. *Longval*, 378 Mass. 246, 253 (1979); *Commonwealth* v. *Settipane*, 5 Mass. App. Ct. 648, 654-655 (1977). The fact that the defendant, as the judge noted, had engaged in significant drug trafficking provided information in the nature of background which the judge could weigh in the over-all assessment of the sentences to be imposed. That consideration was also relevant, as expressly mentioned by the judge, to the possibility that cooperation by the defendant with the authorities as to his drug activities (names of suppliers, etc.) might furnish a basis for a motion to

revoke and revise the sentences. The judge was especially careful, however, not to link the length of the sentences imposed with the condition of the defendant's future cooperation.

Finally, the assaults on Trooper O'Connor provided a proper basis for the imposition of separate concurrent sentences on the defendant's convictions of assault with intent to kill and assault and battery by means of a dangerous weapon for the reasons stated in *Salemme* v. *Commonwealth*, 370 Mass. 421 (1976).

*Judgments affirmed.*