COMMONWEALTH vs. STEVEN ENNIS.

Middlesex.   May 8, 1985. — June 26, 1985.

Present: GRANT, ARMSTRONG, & SMITH, JJ.

*Assault with Intent to Murder. Malice. Intent. Practice, Criminal,*
    *Instructions to jury.*

Discussion of the element of specific intent, with respect to the offense of
    assault with intent to murder. [264-268]
Although the judge at the trial of indictments charging armed assault
    with intent to murder correctly instructed the jury that a specific intent
    to kill was required for conviction, the charge as a whole created a
    substantial risk of a miscarriage of justice, where the judge also instructed
    the jury in terms of murder and manslaughter, with a definition of malice
    less specific than the state of mind needed for conviction of assault with
    intent to murder. [269]


INDICTMENTS found and returned in the Superior Court De-
partment on March 29, 1983.

The cases were tried before *Robert A. Barton*, J.

*Maureen B. Brodoff*, Committee for Public Counsel Serv-
ices, for the defendant.

*Natalea Skvir*, Assistant District Attorney, for the Common-
wealth.

ARMSTRONG, J. In the immediate aftermath of their armed
robbery of a pharmacy in Winchester in 1983, the defendant
and his accomplice fled in a yellow Volkswagen automobile,
pursued by police. After a high speed chase, they stopped,
and a police officer approached the Volkswagen from behind,
telling the driver — the only person he could see in the car
— to come out with his hands up. The defendant suddenly
popped up in the rear seat and, breaking the rear window, fired
a shot at the officer.[1] The Volkswagen sped off. The officer

---

[1] The transcript leaves unclear whether the window was first broken and
then the shot fired or the shot was fired directly through the window, breaking

had felt something graze his forehead and found later that he was cut over one eye. He nevertheless resumed the chase. Other officers joined in. More shots were fired on both sides before the defendant and his accomplice were apprehended. In addition to the armed robbery itself and a variety of other charges, the defendant was tried and convicted on three charges of armed assault with a dangerous weapon with intent to murder (G. L. c. 265, § 18 [*b*])[2] based on the shots fired at different pursuing officers. The three appeals before us are from those convictions only.[3]

The appeals are based solely on the judge's instructions to the jury concerning the state of mind necessary for commission of the offenses: in particular, the element of specific intent to kill. See *Commonwealth* v. *Reynolds*, 120 Mass. 190, 197-198 (1876); *Commonwealth* v. *Henson*, 394 Mass. 584, 590-592 (1985). The defendant concedes that the judge several times instructed the jury that they could not convict without finding "specific intent" (sometimes stated as "specific intent to kill," sometimes as "specific intent to murder," and sometimes unqualified), but he argues that the import of that instruction was substantially undermined by the definition given the jury of "malice," the element which has been held to be the distinction between assault with intent to murder (G. L. c. 265, § 15; if armed, § 18) and assault with intent to kill (G. L. c. 265, § 29). *Commonwealth* v. *Henson*, 394 Mass. at 591. *Commonwealth* v. *Alfonso*, 19 Mass. App. Ct. 599, 604 (1985).

---

it. The officer, on seeing the defendant pop up into view, had dropped behind the car for protection. Defense counsel argued to the jury that the cut the officer sustained over his eye was probably not caused by the bullet but, instead, either by flying glass or by his head hitting the car as he dived for protection.

[2] By St. 1981, c. 678, § 3, § 18 was amended so as to make special provision for armed assaults with intent to rob or murder victims sixty-five years of age or over. The new provision appears as § 18(*a*). Section 18(*b*) deals with armed assaults with intent to rob or murder other victims.

[3] The defendant was sentenced to a State prison term of twenty to thirty years on the armed robbery conviction and, concurrently therewith, eighteen to twenty-year terms on each of the three convictions under appeal. Other convictions, including ones for assault by means of a dangerous weapon (mentioned near the end of the opinion), were placed on file with the defendant's consent.

The judge defined malice to include "any unexcused intent to kill, to do grievous bodily harm, or to do an act creating a plain and strong likelihood that death or grievous harm will follow."[4] That definition, the defendant argues, in effect contradicted the instruction concerning specific intent to kill, planting in the jurors' minds the thought that they might find the defendant guilty of assault with intent to murder on a showing of something less than an intent actually to kill the pursuing officers, such as an intent to wound them or to scare them off by creating a grave hazard.

*Commonwealth* v. *Henson* was decided after the trial of this case. It represents the culmination of a line of recent cases (*Commonwealth* v. *Hebert*, 373 Mass. 535 [1977]; *Commonwealth* v. *Parenti*, 14 Mass. App. Ct. 696 [1982]; *Commonwealth* v. *Alfonso, supra*) discussing the specific intent element necessary to convict of assault with intent to murder and assault with intent to kill. The *Henson* case, as we understand its holding at 590-592, settles that both charges have as an element an actual, subjective intent on the part of the defendant to kill, and that an intent merely to disable or to scare off a pursuer, but not to kill him, does not constitute the intent required by G. L. c. 265, §§ 15, 18, and (in the case of assault with intent to kill) § 29. Recognizing that the requisite intent is far more specific than that implied by the general concept of malice, the *Henson* case holds that, in the context of these statutes, malice (as the element distinguishing assault with intent to murder from assault with intent to kill) "means only absence of justification, excuse, and mitigation." 394 Mass. at 591.

The definition of malice given by the judge is a traditional and approved definition in Massachusetts, derived from a succession of much cited cases, including *Commonwealth* v. *Chance*, 174 Mass. 245, 252 (1899), and *Commonwealth* v. *Huot*, 380 Mass. 403, 408 (1980). See discussion in *Common-*

---

[4] The instruction continued with language paraphrased from *Commonwealth* v. *Webster*, 5 Cush. 295, 304 (1850): "Malice here is used in a technical sense. Malice includes not only those motives which may spring from anger, hatred, or revenge, in a killer, but from any other unlawful or unjustifiable motive that such a person may harbor."

*wealth* v. *McInerney*, 373 Mass. 136, 141 (1977); *Commonwealth* v. *Starling*, 382 Mass. 423, 427-428 (1981); *Commonwealth* v. *Parenti*, 14 Mass. App. Ct. at 699-702. Had one of the three police officers been struck and killed by the defendant's bullets and the defendant charged with murder, an instruction to the jury explaining "malice" in the exact words used here by the judge would have been correct and appropriate. Indeed, the judge prefaced his instruction by saying that, for the purpose of defining the concept of murder for the jury, he would explain as if the officers assaulted had in fact been killed. The instruction to the jury on the crime of assault with intent to murder was structured on (1) an explanation of assault, (2) an instruction that the charge necessitated proof of specific intent to murder, and (3) an explanation of the elements of murder.[5]

A charge so structured (i.e., by reference to what crime would have been committed if death had resulted) can trace its origin to *Commonwealth* v. *Demboski*, 283 Mass. 315, 323 (1933), where, quoting with approval from *State* v. *Butman*, 42 N.H. 490, 493 (1861), the court stated that "if the evidence shows an intent to kill under such circumstances as to constitute a murder,

---

[5] After instructing the jury on the difference between specific intent and general intent, the judge proceeded: "Now I must define murder for you to determine whether if death had followed there was a specific intent to kill, which would constitute murder. Now, again, neither of these defendants [is] being charged for murder. They're being charged for armed assault with the specific intent to commit murder. So in order to define murder to you I'm going to define it as it would be defined to you, to find out whether or not the Commonwealth has proved the specific intent element to commit murder, I'm going to define it as if someone had, in fact, died." The jury were then instructed on the elements of the crime of murder, including the definition of malice quoted in the text. The portion of the charge relative to these indictments ended: "If circumstances attending a killing disclose that death follows from a purposeful, selfish, wrongful motive as distinguished from the frailty of human nature, then there is malice aforethought. The evidence must tie the weapon to the defendant. It must place him at the scene of the crime, and it must establish that the use of the weapon was intentional, and that the intent was formed before the act. So, remember, malice aforethought is an essential ingredient of the crime of murder." These instructions, in conjuction with those set out in the text and in n.4, could well have left the jury with the impression that specific intent to murder was a technical concept involving an intentional use of a weapon in circumstances "creating a plain and strong likelihood that death or grievous harm [would] follow."

if death had followed, the party may be convicted of assault with intent to murder. If the offense, if completed, would be manslaughter only, the party may be convicted of assault with intent to kill only, or may be convicted of an assault only." A charge structured around the difference between murder and manslaughter in effect suggests to the jury that they determine which crime would have been committed if death had resulted, and then give effect to the fact that death did not result by finding assault with intent to murder, or assault with intent to kill only, in accordance with whether the crime would have been murder or only manslaughter if death had followed.

Such a charge invites misunderstanding because neither murder nor manslaughter requires an actual intent to kill. *Commonwealth* v. *McInerney*, 373 Mass. 136, 141 (1977). *Commonwealth* v. *Hebert*, 373 Mass. 535, 538-539 (1977). *Commonwealth* v. *Puleio*, 394 Mass. 101, 107 (1985). The misleading potential of such a charge cannot be illustrated better than by referring to the familiar class of cases, of which this is one, where a fleeing robber shoots at pursuing police officers. If a bullet should strike and kill one of the officers, the robber would be guilty of murder because (apart from the felony-murder concept) his act was malicious in the legal contemplation of that term, regardless whether his purpose was to kill or merely to frighten off his pursuers. But if a death does not result, he cannot be convicted of assault with intent to murder or assault with intent to kill if his intent was merely to frighten off his pursuers.

In light of the *Henson* case, we feel that it is inadvisable to structure jury charges in cases of assault with intent to murder in a manner that involves the traditional definition of murder. Such an instruction will tend to confuse the jury because of its incorporation of a definition of malice that is less specific than the state-of-mind element needed for conviction of assault with intent to murder. It will be more helpful to the jury if the crime is described as consisting of three elements: (1) assault, (2) a specific (or actual) intent to kill the person assaulted,

and (3) malice.[6] The third element should be defined, as the *Henson* case indicated, as an absence of justification or mitigation.[7] The lesser included offense of assault with intent to kill consists of the first two elements coupled with the absence of justification and the presence of mitigation. See Nolan, Criminal Law § 324 (1976).

It is conceded by both the defendant and the Commonwealth that, in this case, the judge was correct in omitting to charge the jury on the lesser included offense of assault with intent to kill. In the typical case of a fleeing felon shooting at pursuing police officers, there will be no suggestion of mitigation such as to call for an instruction on assault with intent to kill and surely no suggestion of justification. It is settled that a judge should not charge on a lesser included offense not suggested by any reasonable view of the evidence. *Commonwealth* v. *Rembiszewski*, 363 Mass. 311, 320-321 (1973). *Commonwealth* v. *Walden*, 380 Mass. 724, 727-728 (1980). *Commonwealth* v. *Bellamy*, 391 Mass. 511, 514-515 (1984).

---

[6] The crime described in G. L. c. 265, § 18(*a*), involves a fourth element: namely, that the victim be sixty-five years of age or over. See note 2, *supra*.

[7] "Justification" and "excuse" seem to be used synonymously to indicate the instances where a homicide, although intentional, is not unlawful. Examples to illustrate the concept for a jury could include the acts of a soldier in wartime or one who kills reasonably in self-defense. The words "mitigation," "palliation," or "extenuation" are used to describe the class of cases where the homicide is unlawful but the intention to kill arises from the frailty of human nature, as in instances of great provocation, sudden combat, or excessive force in self-defense. See Nolan, Criminal Law § 203 (1976).

In the form of charge that we suggest be given in cases of assault with intent to murder, the content of the word "malice" as used to distinguish murder from manslaughter (the traditional concept of malice) is broken into two separate elements: (1) actual intent to kill, and (2) absence of justification or mitigation. The two elements are usually stated in conjunction in the general definition of malice. See, e.g., *Commonwealth* v. *Huot*, 380 Mass. at 408 ("any unexcused intent to kill, to do grievous bodily harm, . . . [etc.]"); *Commonwealth* v. *Festa*, 369 Mass. 419, 424 (1976) ("[Malice] comprehends any intent to inflict injury without legal justification or palliation."); *Commonwealth* v. *Mangum*, 357 Mass. 76, 85 (1970) ("If there was an intention on the part of the defendant to inflict injury upon the deceased which was not justified on any lawful ground or palliated by the existence of any mitigating circumstances, that intention was malicious within the meaning of the law").

From appellate examination of transcripts in assault with intent to murder cases, we recognize that the form of charge given in this case has been used frequently, without objection. Where, as here, no objection was raised at the trial, reversal is called for if there is a substantial risk of a miscarriage of justice. *Commonwealth* v. *Freeman*, 352 Mass. 556, 563-564 (1967). *Commonwealth* v. *Williams*, 378 Mass. 242, 242-243 (1979). In the class of cases we are considering (the fleeing felon eluding arrest), the evidence does not, as a rule, show overwhelmingly an intent on the part of the felon to kill, rather than merely to wound or frighten off, his pursuers. Where examination of the judge's instructions, read as a whole, leaves the impression that the jury could have understood the instructions to mean that they might find the defendant guilty without finding that he had an actual intent to kill his pursuers, it is impossible to avoid the conclusion that there has been a substantial risk of a miscarriage of justice under the *Freeman* standard. Each charge must be read independently to ascertain whether the jury could have been misled.[8] In this case, for the reasons stated in more detail in note 5, *supra*, and despite the excellence and meticulousness of the charge in other respects, we have reached the conclusion that the jury could have been misled as to the state of mind necessary to support convictions on the indictments. Accordingly, we are in this case obliged to reverse the convictions.

---

[8] In *Commonwealth* v. *Alfonso*, 19 Mass. App. Ct. 599 (1985), the defendant, who was tried on two indictments for armed assault with intent to murder, was convicted of assault with intent to kill on instructions that were, in part, identical to those in the present case (the same judge sat in both cases). That case is distinguishable from this on the ground that the judge, after instructing on the lesser included offenses of which the defendant was convicted, gave a summation which stated repeatedly and emphatically that the jury were required to find a specific intent to kill in order to convict of either offense. That summation was not given in the instructions to the jury in the present case and thus could not have overcome misimpressions that may have been gleaned from the main body of the charge. While the *Alfonso* case is thus distinguishable, we caution against reliance on the third sentence appearing on page 604 of that opinion, which, in light of the *Henson* decision (released shortly after this court's decision in *Alfonso*), may not be a wholly informative description of the state of mind requisite to conviction under § 15 or § 18.

Neither the defendant nor the Commonwealth has briefed or argued the question of the sufficiency of the evidence to show the element of actual intent to kill. Accordingly, we do not discuss that question beyond observing that the evidence with respect to the first officer (indicating an attempt to ambush at close range, with a shot aimed at the head) more obviously supports an inference of intent to kill than does the evidence with respect to the other officers. It appears from so much of the trial record as we have that the defendant was tried (simultaneously with these cases) on indictments for assault by means of a dangerous weapon (G. L. c. 265, § 15B[b]) and (in the instance of the first officer) assault and battery by means of a dangerous weapon (G. L. c. 265, § 15A[b]) based on the same assaults that are the subjects of the convictions on appeal. Indictments for assault with intent to murder and assault by means of a dangerous weapon, although based on the same assault, are, for the reasons stated in *Salemme* v. *Commonwealth*, 370 Mass. 421, 424 (1976); *Commonwealth* v. *Burkett*, 5 Mass. App. Ct. 901, 903 (1977); *Commonwealth* v. *Connors*, 13 Mass. App. Ct. 1005, 1007 (1982); and *Commonwealth* v. *Flanagan*, 17 Mass. App. Ct. 366, 371-372 (1984), not duplicitous. In cases where there is doubt that the evidence will support an inference of actual intent to kill, the Commonwealth may deem it preferable to indict and prosecute under § 15A or § 15B. These statutes, of course, involve lesser penalties (ten and five years maximum, respectively) than those available under §§ 18 and 15 (twenty and ten years, respectively) and, in view of the special dangers to which law enforcement officers are exposed, legislative consideration of a special statute applicable to assaults by means of dangerous weapons on law enforcement officers may well be called for. Compare, e.g., G. L. c. 265, § 13A (assault and battery generally) with §13D (assault and battery on a police officer, etc.).

The judgments on indictments nos. 83-988, 83-989, and 83-991 are reversed, and the verdicts on those indictments are set aside.

*So ordered.*